**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

| | |
|---|---|
| NATHANIEL TORRES and RORY MICHIE, individually and on behalf of all others similarly situated, <br><br>     *Plaintiffs*, <br><br> v. <br><br> SWEEPSTEAKS LIMITED; ADIN ROSS; and AUBREY DRAKE GRAHAM <br><br>     *Defendants*. | Case No.: 1:25-CV-1292-KG-KK |

**DEFENDANTS' MOTION TO COMPEL ARBITRATION
AND STAY PROCEEDINGS**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT................................................................................................1

BACKGROUND ...............................................................................................................2

A.    The Parties ...........................................................................................................2

B.    Plaintiff created an account and agreed to arbitrate all disputes relating to his use
      of the Platform. ....................................................................................................3

C.    Plaintiff files this action. .....................................................................................6

LEGAL STANDARD ........................................................................................................7

ARGUMENT ...................................................................................................................8

I.    Plaintiffs must submit their claims against all Defendants to binding, individual
      arbitration. ............................................................................................................8

A.    The Convention governs the arbitration agreement...............................................8

B.    Plaintiffs agreed to arbitrate all disputes relating to their use of the Platform. ............9

C.    The parties delegated all threshold questions of arbitrability—including whether
      non-signatories can enforce the arbitration agreement—to the arbitrator. .................12

D.    Even if the parties hadn't delegated arbitrability to the arbitrator, the Court would
      still be required to compel Plaintiff to arbitrate his claims against Mr. Graham and
      Mr. Ross. ...........................................................................................................14

II.   The Court should stay this action pending resolution of Plaintiffs' claims in arbitration. 17

CONCLUSION...............................................................................................................17

## TABLE OF AUTHORITIES

**Cases**

*Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Texas*,
   571 U.S. 49 (2013) ............................................................................................. 10

*Barron v. Evangelical Lutheran Good Samaritan Society*,
   2011-NMCA-094, 150 N.M. 669 ....................................................................... 12

*Belcourt v. Grivel, S.L.R.*,
   No. 2:08-CV-902-TC, 2009 WL 3764085 (D. Utah Nov. 9, 2009) ......................... 7

*Belnap v. Iasis Healthcare*,
   844 F.3d 1272 (10th Cir. 2017) ................................................................... 13, 14

*BOSC, Inc. v. Bd. of Cnty. Comm'rs of Bernalillo Cnty.*,
   853 F.3d 1165 (10th Cir. 2017) ........................................................................... 7

*Boyle v. Sweepsteaks Ltd.*,
   No. 8:25-cv-302, 2025 WL 1674480 (C.D. Cal. May 19, 2025) ........................... 14

*Brayman v. KeyPoint Gov't Solutions, Inc.*,
   83 F.4th 823 (10th Cir. 2023) ........................................................................... 13

*Clements v. Alto Trust Co.*,
   685 F. Supp. 3d 1249 (D.N.M. 2023) ...........................................................7, 10, 11

*Compare Davis v. USA Nutra Labs*,
   303 F. Supp. 3d 1183 (D.N.M. 2018) .................................................................. 10

*Damon v. StrucSure Home Warranty, LLC*,
   2014-NMCA-116, 338 P.3d 123 ......................................................................... 16

*Davis v. USA Nutra Labs*,
   303 F. Supp. 3d 1183 (D.N.M. 2018).................................................................. 11

*Day v. Matador Prod. Co.*,
   No. 1:24-cv-00677-MIS-SCY, 2025 WL 1581115 (D.N.M. Jun. 4, 2025)........... 14, 15

*Dean Witter Reynolds, Inc. v. Byrd*,
   470 U.S. 213 (1985)............................................................................................. 7

*Dish Network L.L.C. v. Ray*,
   900 F.3d 1240 (10th Cir. 2018) ................................................................... 12, 13

*Doe v. Massage Envy Franchising, LLC.*,
   2020 WL7624620 (D. Del. Dec. 21, 2020)......................................................... 10

*Fedor v. United Healthcare, Inc.*,
   976 F.3d 1100 (10th Cir. 2020) ......................................................................... 16

*First Options of Chicago, Inc. v. Kaplan*,
   514 U.S. 938 (1995) ...................................................................................... 9, 13

*Fleet Mortg. Corp. v. Schuster*,
   1991-NMSC-046, 112 N.M. 48 .......................................................................... 15

*Hancock v. Am. Tel. & Tel. Co., Inc.*,
   701 F.3d 1248 (10th Cir. 2012) ....................................................................10, 11

*Hartbarger v. Frank Paxton Co.*,
   1993-NMSC-029, 115 N.M. 665 ....................................................................... 10

*Juarez v. THI of New Mexico at Sunset Villa, LLC*,

2022-NMCA-056, 517 P.3d 918 ................................................................................... 13

*La Frontera Ctr., Inc. v. United Behavioral Health, Inc.*,
268 F. Supp. 3d 1167 (D.N.M. 2017)..................................................................... 16

*Ledee v. Ceramiche Ragno*,
684 F.2d 184 (1st Cir. 1982) ...................................................................................... 9

*M.M. v. Sweepstakes Ltd.*,
No. 25-cv-11481-RGS, 2025 WL 3240413 (D. Mass. Nov. 20, 2025)................... 14

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
473 U.S. 614 (1985)............................................................................................. 7, 9

*Myers v. Papa Texas, LLC*,
749 F. Supp. 3d 1165 (D.N.M. 2024)...................................................................... 10

*Newell Rubbermaid Inc. v. Storm*,
No. 9398-VCN, 2014 WL 1266827 (Del. Ch. Ct. Mar. 27, 2014)........................... 10

*Patterson v. Nine Energy Serv., LLC*,
330 F. Supp. 3d 1280 (D.N.M. 2018) ...................................................................... 12

*Pope v. Gap, Inc.*,
125 N.M. 376, 961 P.2d 1283 (App. 1998)............................................................. 10

*PRM Energy Sys., Inc. v. Primenergy, L.L.C.*,
592 F.3d 830 (8th Cir. 2010) .................................................................................... 16

*Ragab v. Howard*,
841 F.3d 1134 (10th Cir. 2016) .................................................................................. 9

*Rent-A-Center, West, Inc. v. Jackson*,
561 U.S. 63 (2010)...................................................................................................... 8

*Riley v. Kingsley Underwriting Agencies, Ltd.*,
969 F.2d 953 (10th Cir. 1992) ............................................................................... 7, 8

*Route App, Inc. v. Heuberger*,
No. 2:22-CV-291-TS-JCB, 2022 WL 2316377 (D. Utah Jun. 28, 2022)................ 10

Smith v. Spizzirri,
601 U.S. 472 (2024)................................................................................................... 17

*SRI of New Mexico, LLC v. Hartford Fire Ins. Co.*,
2015 WL 12803774 (D.N.M. Jun. 26, 2015).......................................................... 12

*Talbott v. Roswell Serv. Corp.*, 2005-NMCA-109, 138 N.M. 189 ............................. 12

**Statutes**

9 U.S.C. § 1................................................................................................................... 1

9 U.S.C. § 2................................................................................................................... 9

9 U.S.C. § 201............................................................................................................... 7

9 U.S.C. § 202............................................................................................................... 9

9 U.S.C. § 208............................................................................................................... 7

9 U.S.C. § 3............................................................................................................. 1, 17

Pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, Defendants respectfully request that the Court compel Plaintiffs to submit their claims to binding individual arbitration in accordance with the Terms and Conditions to which they agreed when they created their account on Defendant's entertaining social gaming platform, Stake.us (the "Platform"). When Plaintiffs created their user accounts on the Platform, they agreed to arbitrate all disputes with Defendant, including questions concerning the validity and enforceability of the agreement and arbitrability of disputes. Moreover, Plaintiffs also agreed to arbitrate Platform-related disputes with certain third parties, including Sweepsteaks Limited's contractors, agents, subcontractors, or suppliers. The Court therefore must compel Plaintiffs to arbitrate their claims and stay further proceedings pending arbitration pursuant to 9 U.S.C. § 3.

Defendants hereby move this court to compel arbitration and stay the proceedings. Defendants Aubrey Drake Graham and Adin Ross join this motion as alternative relief to the relief sought in their earlier-filed motions to dismiss for lack of personal jurisdiction (ECF nos. 16 and 17) and ask that the Court first decide those motions before ruling on this motion as to them, if necessary.

## PRELIMINARY STATEMENT

This case should not be in this, or any other, Court. Plaintiffs Nathaniel Torres and Rory Michie agreed to submit their claims against Defendants to arbitration at least twice—first when they created their accounts on the Stake.us Platform, and later when they agreed to an updated version of the Platform's Terms and Conditions ("Terms"). The terms of that agreement require Plaintiffs and Sweepsteaks Limited to resolve all Platform-related disputes between them— including disputes regarding the scope, validity, and enforceability of the arbitration agreement—in binding arbitration administered by the American Arbitration Association. Not

1

only that, Plaintiffs also agreed to arbitrate Platform-related disputes with Sweepsteaks Limited's contractors, agents, licensors, subcontractors or suppliers.

Plaintiffs cannot genuinely dispute this. When they created their accounts, the Platform not only presented the Terms to registering users, but required them to scroll through the Terms in their entirety before checking a box to indicate that they accepted them. What's more, when each Plaintiff logged into his account in August 2025, Sweepsteaks Limited informed Plaintiffs that it had updated the Terms. Once again, before either Plaintiff could access any of the Platform's features, he had to scroll through the Terms in their entirety, check a box indicating he agreed to the updated Terms, and then click a button to confirm his acceptance.

Despite affirmatively agreeing to arbitrate at least twice, Plaintiffs filed this putative class action bringing claims under New Mexico consumer protection and gambling law. Plaintiffs' claims will fail because, among other things, the Platform's games are not "gambling." But that question is not before the Court. Instead, the Court must decide only one issue: whether Plaintiffs agreed to submit their claims—as well any challenge to the arbitration agreement's validity, enforceability, or scope—to binding, individual arbitration. Because they did, the Court should compel Plaintiffs to submit their claims to arbitration and stay proceedings pending the outcome of that arbitration.

## BACKGROUND

### A.  The Parties

Sweepsteaks Limited operates an online social gaming platform, Stake.us (the "Platform"). The Platform allows users to play entertaining virtual casino-style games. (Declaration of Jarrod Febraio ("Febraio Decl.") ¶ 4.) The Platform's games are free to play; users never have to pay to play. (Febbraio Decl., Ex. F, Terms Version ("Terms") 13, §§ 7.1(b),

8.1(b)).[1] Defendant Aubrey Drake Graham is an individual residing in Texas. Defendant Adin

Ross is an individual residing in Florida. (Compl. ¶¶ 14–15). Plaintiff alleges that Mr. Graham

and Mr. Ross engage in "influencer marketing" on behalf of Sweepsteaks Limited (*Id.* ¶¶ 9, 47–

60.)

      Plaintiff Nathaniel Torres is a Platform user who lives in Los Lunas, New Mexico.

(Compl. ¶ 11.) Plaintiff Rory Michie is a Platform user who resides in Albuquerque, New

Mexico. (*Id.* ¶ 12) Plaintiffs allege that they both "lost money gambling" on the Platform as a

result of "Defendants' wrongful trade practices." (*Id.* ¶¶ 11–12)

### B. Plaintiff created an account and agreed to arbitrate all disputes relating to his use of the Platform.

      Before any user can play any of the Platform's games, the user must create an account.

(Febbraio Decl. ¶ 12.) Plaintiffs were no exception. Plaintiff Michie created his user account on

September 5, 2024 and Plaintiff Torres created his user account on October 5, 2024. (Id. ¶¶ 7–8.)

When Plaintiffs created their accounts, the Platform required new users to provide their email

address, date of birth, and state of residence, and to create a username and password. (Decl.

¶ 11.) The Platform's registration also required new users to agree to the Terms and Conditions

("Terms") and the arbitration agreement within them. (Id. ¶ 10.) Before a user could create an

account, the Platform required the registering user to scroll through the Terms in their entirety

and check a box affirming that the user had "read and agree[d] to the Terms and Conditions."

(Decl. ¶ 12.) Only then could the user click the "Create an Account" button and complete the

registration process. (Id. ¶ 13.)

---

[1] All citations to the Terms, ("Terms § __"), will be to Version 13, (Febbraio Decl., Ex. F), unless otherwise noted.

Later, on August 12, 2025, Plaintiff Torres and Plaintiff Michie accepted updated versions of the Terms through a similar process. (Id. ¶ 16.) As during the registration process, the Platform displayed the updated Terms in a scrollable window and required users to scroll through the Terms in their entirety and check a box indicating that they had read and agreed to the Terms. (Id. ¶ 17; Febbraio Decl. Ex. A.) Only then could the user click "Accept" and proceed to access the Platform. (Febbraio Decl. ¶ 17)



The Terms govern the relationship between Sweepsteaks Limited and users like Plaintiffs. By engaging in activity on the Platform, such as creating an account or accessing the Platform's games, users confirm that they have read and agree to be bound by the Platform's Terms and any subsequent updates to them. (Terms §§ 1, 27.2.) If a user does not wish to accept the Terms, they

4

"may not continue to access the Platform or play any of the [g]ames (including the website and any associated apps)." (Terms § 1.)

The Terms include an arbitration agreement. When a user views the Terms, they are notified of the arbitration agreement immediately, stating:

> **IMPORTANT NOTICE: THIS AGREEMENT IS SUBJECT TO BINDING ARBITRATION AND A WAIVER OF CLASS ACTION RIGHTS AS DETAILED IN CLAUSE 26.**

(Terms at 1.) When a user scrolls down to clause 26, the Terms again alert user to the importance of the arbitration agreement, encouraging users to:

> **PLEASE READ THIS CLAUSE 26 CAREFULLY AS IT REQUIRES YOU TO ARBITRATE DISPUTES AGAINST STAKE ON AN INDIVIDUAL BASIS AND LIMITS THE MANNER IN WHICH YOU CAN SEEK RELIEF FROM STAKE.**

(Terms § 26.1.)  Under that clause, Sweepsteaks Limited and its users agree to arbitrate

> any and all past, present and future disputes, claims or causes of action between you and Stake or any of its affiliates, subsidiaries, ultimate parent and parent companies, partners, officers, directors, employees, contractors, shareholders, agents, licensors, subcontractors or suppliers, which arise out of or are related in any way to these Terms, the formation of these Terms, the validity or scope of this clause 26 (Dispute Resolution and Agreement to Arbitrate), your Participation in or other access to or use of the Games or the Platform, or any other dispute between you and Stake or any of its affiliates, subsidiaries, ultimate parent and parent companies, partners, officers, directors, employees, contractors, shareholders, agents, licensors, subcontractors or suppliers, including as to the arbitrability of any of the foregoing, and whether arising prior to or after your agreement to this clause 26 (Dispute Resolution and Agreement to Arbitrate) (all of the foregoing, collectively "Disputes") . . . .

(Terms § 26.3.)

The parties also agreed to arbitrate "any question regarding the existence, validity, enforceability, or termination" of the Terms or the arbitration agreement. (*Id.* § 26.6(a)). The arbitration agreement calls for the American Arbitration Association ("AAA") to administer the arbitration and incorporates the AAA's Rules. (*Id.*) All disputes must proceed in an "individual

5

capacity only," and neither party may participate in a class or collective action, as defined in the Terms. (Terms § 26.7.)

Users are never required to agree to arbitrate. Under the arbitration agreement, a user may opt out by sending written notice to Sweepsteaks Limited within 30 days of account creation. (Terms § 26.9.) In their complaint, Plaintiffs do not purport to have opted out of the arbitration agreement.

### C.  Plaintiff files this action.

Despite the parties' agreement, on October 29, 2025, Plaintiffs commenced this putative class action in the Second Judicial District Court, Bernalillo County. (*See* Compl., Notice of Removal at 14–47, Dkt. No. 1.) Plaintiffs seek to recover on behalf of themselves and a putative class under (1) the New Mexico Unfair Practices Act, NMSA 1978, §§ 57-12-1 to -26, *et seq.*, which prohibits unfair and deceptive business practices; (2) a theory of unjust enrichment; and (3) NMSA 1978, § 44-5-1, which creates a cause of action to recover money lost at gambling. (Compl. ¶¶ 73–87.) On December 23, 2025, Defendants timely removed the action to this Court under 9 U.S.C. § 205 and 28 U.S.C. §§ 1441, 1446, and 1453 (*See* Notice of Removal, Dkt. No. 1.)

Plaintiffs allege that Sweepsteaks Limited violated New Mexico law by offering entertaining, casino-themed social games via the Platform. Plaintiffs erroneously contend that the Platform is an "illegal online casino." (*Id.* ¶ 6.) Plaintiffs further assert that they have "lost money gambling" on the Platform as a result of Defendants' "wrongful trade practices." (*Id.* ¶¶ 11–12.) Defendants dispute these claims. But as Plaintiffs agreed, that dispute must be resolved in arbitration.

## LEGAL STANDARD

Federal policy strongly favors arbitration. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985). Where, as here, the arbitration agreement involves international commerce, this policy applies "with special force." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985); *see Belcourt v. Grivel, S.L.R.*, No. 2:08-CV-902-TC, 2009 WL 3764085, at *1 (D. Utah Nov. 9, 2009) ("In some contexts, arbitration agreements covered by the New York Convention are enforced more stringently than analogous domestic agreements."). Reflecting this policy, the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention") requires courts of signatory states, like the United States, to refer parties to arbitration unless the arbitration agreement is "null and void, inoperative, or incapable of being performed." Convention, Art. II § 3; *see also* 9 U.S.C. § 201 ("The [Convention] shall be enforced in United States courts in accordance with [Chapter 2]."); *Riley v. Kingsley Underwriting Agencies, Ltd.*, 969 F.2d 953, 958–59 (10th Cir. 1992) (discussing applicability of Convention). Chapter 1 of the Federal Arbitration Act, 9 U.S.C. §§ 1–16, applies to proceedings under Chapter 2, so long as it does not conflict with either Chapter 2 or the Convention itself. 9 U.S.C. § 208.

The party seeking to compel arbitration bears the initial burden of presenting evidence sufficient to demonstrate that an enforceable arbitration agreement exists. *See BOSC, Inc. v. Bd. of Cnty. Comm'rs of Bernalillo Cnty.*, 853 F.3d 1165, 1177 (10th Cir. 2017). If that burden is met, the party resisting arbitration must raise a genuine dispute of material fact regarding the agreement's existence. *See id.* Put differently, the party seeking to compel arbitration must show that (1) the parties formed an agreement to arbitrate and (2) the dispute falls within the agreement's scope. *Clements v. Alto Trust Co.*, 685 F. Supp. 3d 1249, 1257 (D.N.M. 2023).

But the Court cannot reach the second issue when the parties have "clearly and unmistakably" delegated threshold issues of scope, validity, and enforceability to the arbitrator. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68 (2010); *Dish Network L.L.C. v. Ray*, 900 F.3d 1240, 1245 (10th Cir. 2018); *see also Clements*, 685 F. Supp. 3d at 1266 (parties can delegate threshold issues by express agreement). In those cases, a court's mandate is limited to deciding whether the parties have agreed to arbitrate. *See Rent-A-Center, West*, 561 U.S. at 68–69.

## ARGUMENT

**I. Plaintiffs must submit their claims against all Defendants to binding, individual arbitration.**

Plaintiffs agreed to submit all disputes relating to the Platform, including their claims against Mr. Graham and Mr. Ross, to arbitration when they first created their accounts and when they later accepted updated versions of the Platform's Terms. They also agreed to submit any arbitrability or enforceability challenge to the arbitrator, including disputes as to whether non-signatories may enforce the arbitration agreement. But even if they had not, the plain language of the agreement requires them to submit their claims against all Defendants to binding, individual arbitration.

### A. The Convention governs the arbitration agreement.

Courts conduct a very limited inquiry when a party moves to compel arbitration under the Convention. *Riley*, 969 F.2d at 959. Before sending the dispute to arbitration, the Court must answer four questions:

1. Is there an agreement in writing to arbitrate the subject of the dispute?

2. Does the agreement provide for arbitration in the territory of the signatory of the Convention?

8

3. Does the agreement arise out of a legal relationship whether contractual or not, which is considered as commercial?

4. Is a party to the agreement not an American citizen, or does the commercial relationship have some reasonable relation with one or more foreign states?

*Id.* (citing *Ledee v. Ceramiche Ragno*, 684 F.2d 184, 186–87 (1st Cir. 1982)).

Because the answer to all four questions is "yes," the Court "is *required* to order arbitration." *Id.* (citing *Ledee*, 684 F.2d at 187) (emphasis in original). Beginning with questions one and three, the arbitration agreement is part of the Platform's Terms, and is therefore an agreement in writing which arises out of a commercial legal relationship. *See* 9 U.S.C. § 202 (commercial legal relationships include transactions, contracts, or agreements described in 9 U.S.C. § 2). Next, the agreement provides for arbitration in the territory of a signatory country, the United States, administered by the American Arbitration Association, a United States arbitral body. (Terms § 26.6(a).) Finally, because Sweepsteaks Limited is a Cyprus limited company with its principal place of business in Australia, (*see* Notice of Removal at ¶ 77), the arbitration agreement is not entirely between citizens of the United States. Accordingly, the Convention governs and the Court must enforce the arbitration agreement here even "more stringently than analogous domestic agreements." *Belcourt*, 2009 WL 3764085, at *1–2 (citing *Mitsubishi Motors Corp.*, 473 U.S. at 629).

**B. Plaintiffs agreed to arbitrate all disputes relating to their use of the Platform.**

Courts apply state contract law to determine whether a party agreed to arbitrate. *Ragab v. Howard*, 841 F.3d 1134, 1137 (10th Cir. 2016) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). Like any other contract, contracts formed online require mutual assent between the parties and consideration. *Myers v. Papa Texas, LLC*, 749 F. Supp. 3d 1165,

1174 (D.N.M. 2024) (quoting *Hartbarger v. Frank Paxton Co.*, 1993-NMSC-029, ¶ 7, 115 N.M. 665, 669).[2] The test is objective; it is not "based on . . . the private, undisclosed thoughts of the parties." *Clements*, 685 F. Supp. 3d at 1260 (citing *Pope v. Gap, Inc.*, 125 N.M. 376, 961 P.2d 1283, 1287 (App. 1998)). In other words, as long as a website user had reasonable notice and objectively manifested assent to the contract's terms, he will be bound. *See id.* at 1259.

Plaintiffs accepted the Platform's Terms through a variation of a clickwrap agreement sometimes referred to as a scrollwrap. Scrollwraps require users to "scroll through an online agreement and then click 'I agree' to the terms." *Route App, Inc. v. Heuberger*, No. 2:22-CV-291-TS-JCB, 2022 WL 2316377, at *3 (D. Utah Jun. 28, 2022). Agreements formed this way, like standard clickwrap agreements, are "routinely upheld." *Hancock v. Am. Tel. & Tel. Co., Inc.*, 701 F.3d 1248, 1258 (10th Cir. 2012), *abrogated on other grounds by Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Texas*, 571 U.S. 49 (2013). In *Hancock*, for example, the Tenth Circuit enforced an internet service provider's terms of service formed through a nearly identical process. *Id.* at 1257–58. There, customers could not access their internet service without completing a registration process during which the service displayed the relevant terms in a scrolling text box. *Id.* at 1257. To continue, the customer then had to click an "I Agree" button to continue the registration process and activate their service. *Id.*

---

2 The Terms include a governing law provision calling for the application of Delaware law. (Terms § 29.1.) Because choice of law would not affect the outcome, for the purposes of this motion only, Defendants analyze contract formation under New Mexico law. *Compare Davis v. USA Nutra Labs*, 303 F. Supp. 3d 1183, 1190 (D.N.M. 2018) (upholding clickwrap agreement under New Mexico law), *with Doe v. Massage Envy Franchising, LLC.*, 2020 WL7624620, at *3 (D. Del. Dec. 21, 2020) (upholding clickwrap under Delaware law). And as under New Mexico law, under Delaware law, "a contract is valid if it manifests mutual assent by the parties and they have exchanged adequate consideration." *Newell Rubbermaid Inc. v. Storm*, No. 9398-VCN, 2014 WL 1266827, at *6 (Del. Ch. Ct. Mar. 27, 2014).

Sweepsteaks Limited did even more than the defendant internet service provider in *Hancock* to provide reasonable notice. Not only did it present the Terms in a scrolling window during registration, it also required users to scroll to the end. If they attempted to continue without scrolling to the end, the sign-up screen prompted them to "read the [Terms] in full and scroll to the end to accept." (Decl. ¶ 17.; Ex. A.) Only after the user did in fact scroll to the end of the Terms and check the box affirming that they had accepted them could the user proceed. *See Hancock*, 701 F.3d at 1258; *see also Clements*, 685 F. Supp. at 1260–61 (enforcing clickwrap agreement that included link to terms and conditions but no scrolling text box); *Davis v. USA Nutra Labs*, 303 F. Supp. 3d 1183, 1189–90 (D.N.M. 2018) (same).

Not only did Plaintiffs accept the Terms when they created their accounts, they reaffirmed their agreement to arbitrate by accepting an updated version of the Terms in August 2025, again through a scrollwrap process. When Plaintiffs accessed the Platform on August 12, 2025, they could not use any of the Platform's features until they scrolled through an updated version of the Terms in their entirety, checked a box to confirm that they read and accepted them, and clicked a button also indicating that they accepted the updated Terms. Sweepsteaks Limited's user account records show that they did just that. (Decl. ¶¶ 16–17, Ex. B.) Those records also show that Plaintiffs continued to access the Platform through late October 2025. Plaintiffs therefore cannot dispute that they had notice of the updated Terms— without accepting the updated Terms, they could not have accessed any Platform features after August 12. *See Hancock*, 701 F.3d at 1258. Plaintiffs are therefore bound by the Terms and the arbitration agreement within them.

Finally, the arbitration agreement is supported by adequate consideration. Consideration "consists of a promise to do something that a party is under no legal obligation to do or to forbear from doing something he has a legal right to do." *Patterson v. Nine Energy Serv., LLC*,

330 F. Supp. 3d 1280, 1296 (D.N.M. 2018) (quoting *Talbott v. Roswell Serv. Corp.*, 2005-NMCA-109, ¶ 16, 138 N.M. 189). Mutual promises to arbitrate are by themselves adequate consideration to support an arbitration agreement. *Id.* The consideration supporting the contract as a whole can likewise support the arbitration agreement. *See Barron v. Evangelical Lutheran Good Samaritan Society*, 2011-NMCA-094, ¶ 49, 150 N.M. 669 (concluding that arbitration clause did not need consideration separate from agreement as a whole); *see also SRI of New Mexico, LLC v. Hartford Fire Ins. Co.*, 2015 WL 12803774, at *3 (D.N.M. Jun. 26, 2015) (no additional consideration necessary where arbitration agreement is part of more extensive contract supported by valid consideration).

Plaintiffs and Sweepsteaks Limited agreed to waive their right to a judicial forum and gain the right to invoke arbitration. Nothing more is required. *See Patterson*, 330 F. Supp. 3d at 1296. But if something more were required, the arbitration agreement would still be supported by adequate consideration in the form of Sweepsteaks Limited's granting Plaintiffs access to the Platform. *Barron*, 2011-NMCA-094, ¶ 49; *SRI of New Mexico, LLC*, 2015 WL 12803774, at *3. That too is enough.

### C. The parties delegated all threshold questions of arbitrability—including whether non-signatories can enforce the arbitration agreement—to the arbitrator.

Not only did Plaintiffs agree to arbitrate the merits of their claims, they also agreed to arbitrate any disputes regarding the validity, enforceability, and scope of the arbitration agreement. Generally, courts decide such threshold issues unless there is "clear and unmistakable evidence" that the parties intended to delegate them to the arbitrator. *See Dish Network L.L.C. v. Ray*, 900 F.3d 1240, 1245 (10th Cir. 2018). If there is, the Court must respect the parties' decision and refer the threshold dispute to arbitration. *See Belnap v. Iasis Healthcare*, 844 F.3d

12

1272, 1292–93 (10th Cir. 2017) (district court must "eschew consideration of arbitrability" where parties clearly and unmistakably agreed to arbitrate arbitrability).

The arbitration agreement calls for the arbitrator to decide "any question" regarding the validity or enforceability of the arbitration agreement, including "whether the Dispute should be arbitrated in the first place." *See Brayman v. KeyPoint Gov't Solutions, Inc.*, 83 F.4th 823, 833–34 (10th Cir. 2023) (arbitration agreement clearly and unmistakably delegated threshold issues where it stated that arbitrator shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of agreement).[3] The agreement's plain language is therefore "clear and unmistakable evidence" that the parties intended to arbitrate arbitrability. *See id.* at 833 (citing *First Options*, 514 U.S. at 944).

If the agreement's language were not clear enough, the parties reinforced their intentions by incorporating the AAA Rules into the agreement. Rule 7(a) grants the arbitrator authority to rule on his or her own jurisdiction. (Febbraio Decl., Ex. G, R. 7(a)). As the Tenth Circuit has recognized, that too is a "clear and unmistakable expression" of the parties' intent to delegate arbitrability to the arbitrator. *See Dish Network*, 900 F.3d at 1246 (applying Colorado law); *see also Juarez v. THI of New Mexico at Sunset Villa, LLC*, 2022-NMCA-056, ¶ 26, 517 P.3d 918 ("Incorporation of rules of arbitration that give the arbitrator authority to decide questions of arbitrability is considered clear and unmistakable evidence of intent to delegate questions of arbitrability.").

---

[3] The definition of "Dispute" likewise reflects the parties' agreement to delegate arbitrability disputes to the arbitrator, defining the term to include disputes "as to the arbitrability" of any disputes, claims, or causes of action between Plaintiff and "Stake or any of its . . . affiliates, contractors, shareholders, agents, licensors, subcontractors or suppliers. . . ." (Terms § 26.3.)

That means if Plaintiffs wants to argue that Mr. Graham and Mr. Ross can't enforce the arbitration agreement, they must make that argument before the arbitrator. Resolving that question would require the Court to address questions of enforceability and scope: whether Mr. Graham and Mr. Ross can enforce the agreement and whether Plaintiffs' claims against them fall within the scope of the agreement. *Belnap*, 844 F.3d at 1280. Because the arbitration agreement delegates those questions to the arbitrator, the Court may not address them. *See id.* at 1284; *see also Day v. Matador Prod. Co.*, No. 1:24-cv-00677-MIS-SCY, 2025 WL 1581115, at *7 (D.N.M. Jun. 4, 2025) . Like the merits of Plaintiffs' claims, those issues are for the arbitrator.

Courts throughout the country who have considered Sweepsteaks Limited's Terms and arbitration agreement have ruled that the language contained therein illustrates a clear and unmistakable intent to delegate threshold issues of arbitrability to the arbitrator. In fact, as recently as November 2025, a Massachusetts federal court enforced the delegation clause in the Arbitration Agreement at issue here, finding the "parties, through clear and specific language, delegated all questions of arbitrability to the arbitrator." *See M.M. v. Sweepstakes Ltd.*, No. 25-cv-11481-RGS, 2025 WL 3240413, at *1 (D. Mass. Nov. 20, 2025).  Similarly, in 2025, a California federal court considered Sweepsteaks Limited's Terms, and "agree[d] with Sweepsteaks [Limited] that [the delegation clause] clearly and unmistakably delegates the question of arbitrability of claims to the arbitrator." *See Boyle v. Sweepsteaks Ltd.*,  No. 8:25-cv-302, 2025 WL 1674480, at *4 (C.D. Cal. May 19, 2025). On this basis, the Court compelled the parties to resolve their dispute via arbitration, in accordance with the Terms. *Id.* at *7. This Court should do the same.

**D.  Even if the parties hadn't delegated arbitrability to the arbitrator, the Court would still be required to compel Plaintiff to arbitrate his claims against Mr.**

**Graham and Mr. Ross.**

That said, the result would be no different if the Court were to resolve this question. Any argument that Plaintiffs' claims against Mr. Graham and Mr. Ross are outside the arbitration agreement's scope fails for two reasons. First, Mr. Graham and Mr. Ross may enforce the arbitration agreement as third-party beneficiaries because the parties intended the agreement to benefit an identifiable class of which Mr. Graham and Mr. Ross are members. Second, because Plaintiff alleges interdependent and concerted misconduct among a signatory—Sweepsteaks Limited—and nonsignatories—Mr. Graham and Mr. Ross—the Court must compel arbitration under the "alternative estoppel" test.

i. *Mr. Graham and Mr. Ross can enforce the arbitration agreement as third-party beneficiaries.*

The arbitration agreement is clear: it applies to "any and all past, present and future disputes" between users and any of Sweepsteaks Limited's "contractors," "licensors," "subcontractors, or suppliers," and which "arise out of" or are "related in any way" to a user's participation or access to the Platform. (Terms § 26.3.) Because this language reflects the parties' intent to benefit Sweepsteaks Limited's contractors, licensors, subcontractors, and suppliers, Mr. Graham and Mr. Ross can enforce the arbitration agreement as third-party beneficiaries.

A non-signatory may enforce an arbitration agreement as a third-party beneficiary when the contract's plain language itself or some other evidence reveals that the parties intended to benefit the third party. *See Day v. Matador Prod. Co.*, No. 1:24-cv-00677-MIS-SCY, 2025 WL 1581115, at *7 (D.N.M. Jun. 4, 2025) (citing *Fleet Mortg. Corp. v. Schuster*, 1991-NMSC-046, ¶ 4, 112 N.M. 48). As Plaintiffs' allege, Mr. Graham and Mr. Ross have agreements with Sweepsteaks Limited to supply marketing services through "promotional 'livestream[s].'" (*See* Compl. ¶¶ 9, 54–57.) The arbitration agreement here expressly applies to claims against Mr.

Graham and Mr. Ross as "contractors," "licensors, subcontractors, or suppliers." (Terms § 26.3.). The agreement therefore expresses an intent to benefit Mr. Graham and Mr. Ross by requiring users to arbitrate Platform-related claims against them. As intended third-party beneficiaries, Mr. Graham and Mr. Ross may therefore enforce the arbitration agreement. *See Day*, 2025 WL 1581115, at *8 (citing *Fedor v. United Healthcare, Inc.*, 976 F.3d 1100, 1106 (10th Cir. 2020)).

    ii.   *Plaintiff must submit his dispute with Mr. Graham and Mr. Ross to arbitration because he alleges interdependent and concerted misconduct among nonsignatories and a signatory.*

New Mexico law provides a second, and independent, ground for requiring Plaintiffs to arbitrate their claims against Mr. Graham and Mr. Ross. The doctrine of equitable estoppel permits a non-signatory to enforce an arbitration agreement against a signatory where the signatory alleges "substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." *La Frontera Ctr., Inc. v. United Behavioral Health, Inc.*, 268 F. Supp. 3d 1167, 1216 (D.N.M. 2017); *see also Damon v. StrucSure Home Warranty, LLC*, 2014-NMCA-116, ¶ 12, 338 P.3d 123 (discussing New Mexico courts' recognition of equitable estoppel as exception to general rule that nonsignatories to arbitration agreement cannot compel arbitration).

The complaint here is replete with allegations of such interdependent concerted misconduct. Plaintiffs "specifically allege[] coordinated behavior" between a signatory, Sweepsteaks Limited, and nonsignatories, Mr. Graham and Mr. Ross. *PRM Energy Sys., Inc.*, 592 F.3d at 836. Plaintiff alleges that by featuring Mr. Graham on its website, Sweepsteaks Limited uses his "celebrity influence to encourage impressionable users to gamble." (Compl. ¶ 52.) He points to a collaboration involving "a new gaming experience," an "evening of interactive connectivity," giving users "a chance to win big" alongside Mr. Graham. (*Id.*) They

further allege that Sweepsteaks Limited "fronts" Mr. Graham and Mr. Ross "house money" as part of a "marketing tactic designed to draw attention." (Compl. ¶ 56; *see also id.* ¶ 9.) They point to media commentary suggesting that, in doing so, Sweepsteaks Limited, Mr. Graham, and Mr. Ross collude to mislead consumers, "threaten[ing] the welfare of New Mexico residents and especially its young people." (*See id.* ¶¶ 57–59.) Because these allegations arise out of Mr. Graham's and Mr. Ross' alleged conduct in marketing the Platform, Mr. Graham and Mr. Ross may invoke the arbitration agreement here.

Whether under the third-party beneficiary or equitable estoppel doctrine, Mr. Graham and Mr. Ross may enforce the arbitration agreement. Plaintiffs must therefore submit their claims against them to arbitration too.

## II.  The Court should stay this action pending resolution of Plaintiffs' claims in arbitration.

Because all of Plaintiff's claims must be resolved in binding arbitration, the Court should stay this action pending the outcome of the arbitration. Under the FAA, the Court "shall on application of one of the parties stay the trial of the action until [the] arbitration has concluded." 9 U.S.C. § 3. Accordingly, when a "district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding." *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024). Defendants therefore respectfully request that the Court stay this action under section 3 of the FAA pending the resolution of Plaintiff's claims in arbitration.

## CONCLUSION

When Plaintiffs created their Platform accounts, they agreed to arbitrate any and all disputes related to the platform, including disputes with Sweepsteaks Limited's contractors, licensors and suppliers like Mr. Graham and Mr. Ross. Until Plaintiffs filed their Complaint, they

had never indicated otherwise. Accordingly, Defendants respectfully request that the Court (1) enter an order compelling Plaintiffs to submit their claims to arbitration and (2) stay this action pending resolution of this dispute in arbitration.

Dated: February 6, 2026                    Respectfully submitted,

                                           By: */s/A. Jeff Ifrah*
                                           A. Jeff Ifrah (*pro hac vice*)
                                           Robert W. Ward (*pro hac vice*)
                                           IFRAH PLLC
                                           1717 Pennsylvania Ave. NW, Suite 650
                                           Washington, D.C. 20006
                                           Tel. (202) 524-4140
                                           Fax (202) 524-4141
                                           jeff@ifrahlaw.com
                                           rward@ifrahlaw.com

                                           *Counsel for Defendants Sweepsteaks Limited and
                                           Aubrey Drake Graham*

                                           **NEIMAN MAYS FLOCH & ALMEIDA, PLLC**

                                           By: */s/Brandon S. Floch*
                                           Brandon S. Floch
                                           Florida Bar No. 125218
                                           bfloch@nmfalawfirm.com
                                           Christopher D. Joyce
                                           Florida Bar No. 1020006
                                           cjoyce@nmfalawfirm.com
                                           201 South Biscayne Blvd., Suite 1300
                                           Miami, Florida 33131
                                           Phone: (305) 434-4943

                                           *Counsel for Defendant Adin Ross*

## CERTIFICATE OF SERVICE

I certify that on February 6, 2026, I filed the above Motion to Compel Arbitration using the Court's CM/ECF system and served a copy upon counsel for Plaintiff by electronic mail as

18

follows:

Christopher A. Dodd
Amber Fayerberg
FAYERBERG DODD, LLC
500 Marquette Avenue, NW
Suite 1330
Albuquerque, NM 87102
(505) 475-2742
chris@fayerbergdodd.com
amber@fayerbergdodd.com

Steven A. Schwartz (PA Bar No. 50579)
Beena M. McDonald (PA Bar No. 83315)
CHIMICLES SCHWARTZ KRINER & DONALDSON-SMITH LLP
361 W. Lancaster Avenue
Haverford, PA 19041
(610) 642-8500
sas@chimicles.com
bmm@chimicles.com

Garrett W. Wotkyns (AR Bar No. 025887)
CHIMICLES SCHWARTZ KRINER & DONALDSON-SMITH LLP
18146 North 93rd Place
Scottsdale, AZ 85255
(610) 642-8500
garrettwotkyns@chimicles.com

Jarrett L. Ellzey (TX Bar No. 24040865)
Josh Sanford (AR Bar No. 2001037)
Tom Kherkher (TX Bar No. 24113389)
EKSM, LLP
4200 Montrose Blvd, Suite 200
Houston, Texas 77006
(888) 350-3931
jellzey@eksm.com
jsanford@eksm.com
tkherkher@eksm.com
Service: service@eksm.com

*Counsel for Plaintiffs*