IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| NATHANIEL TORRES and RORY MICHIE, individually and on behalf of all others similarly situated,<br><br>   *Plaintiffs*,<br><br>v.<br><br>SWEEPSTEAKS LIMITED, ADIN ROSS, and AUBREY DRAKE GRAHAM<br><br>   *Defendants*. | Case No.: 1:25-cv-1292-KG-KK |

**DECLARATION OF JARROD ANTHONY FEBBRAIO**

I, Jarrod Anthony Febbraio, declare and state the following:

1. I am one of the corporate executives of Sweepstakes Limited, the named defendant in the above-captioned matter. My title is Director of Stake. I respectfully submit this declaration in support of Sweepsteaks Limited's motion to compel arbitration (the "Motion") in this action.

2. I make this declaration based upon my personal knowledge, the books and records of Sweepsteaks Limited that I have reviewed in the course of this litigation, and information reported to me in the ordinary course of business by individuals with a business duty to accurately report that information.

3. I am over the age of eighteen (18) and competent to testify. If called as a witness, I could and would testify competently to the matters stated herein.

4. Sweepsteaks Limited operates Stake.us, an online social gaming platform that specializes in providing entertaining casino-style games via an interactive virtual platform (the "Platform"). The Platform has been available to customers in the United States since August 1, 2022.

5. I understand that on October 29, 2025, Plaintiffs Nathaniel Torres and Rory Michie filed this purported class action against Sweepsteaks Limited, Adin Ross, and Aubrey Drake Graham in the Second Judicial District Court, Bernalillo County, New Mexico. I have reviewed a copy of the Complaint filed by Plaintiffs in the Second Judicial District Court. I further understand that, on December 23, 2025, Defendants removed this action to this Court.

6. Based upon my review of the filings in this action, it is my understanding that Plaintiffs allege that they were users of the Platform. In preparing this Declaration, I have reviewed Sweepsteaks Limited's records regarding Plaintiffs' user accounts on the Platform.

7. Sweepsteaks Limited's user account records reflect that Plaintiff Torres created a user account on the Platform on October 5, 2024. It is also my understanding that Plaintiff last accessed the Platform on October 28, 2025.

8. Sweepsteaks Limited's user account records reflect that Plaintiff Michie created a user account on the Platform on September 5, 2024. It is also my understanding that Plaintiff last accessed the Platform on October 30, 2025. The period during which Plaintiff Michie maintained an active user account on the Platform is referred to in this declaration as the

9. In this Declaration, I will refer to the period from September 5, 2024 to October 30, 2025 as the "Relevant Time Period."

10.     During the Relevant Time Period, Plaintiffs, like all other users of the Platform, could not play any of the games on the Platform, make any purchase on the Platform, or redeem any prizes on the Platform, unless they created a user account on the Platform.

11.     At the time Plaintiffs created their accounts, all users (including Plaintiffs) were required to (a) provide identifying personal information, including their email address, and date of birth and (b) create a username and password.

12.     The Platform also required new users to affirm that they agreed to the Platform's Terms and Conditions ("Terms"). When Plaintiffs created their accounts, the registration screen presented the Terms in a scroll window. Before a user could complete the registration process, the Platform required the user to (a) scroll through the Terms in their entirety and (b) check a box next to the statement "I have read and agree to the Terms and Conditions."

13.     Only after the user both scrolled to the end of the Terms and checked the box could the user click the "Create an Account" button. If a user clicked the "Create an Account" button before completing these steps, the Platform would display the following statement in red text: "Please read the terms and conditions in full and scroll to the end to accept."

14.     Attached hereto as **Exhibit A** is a true and accurate depiction of the registration screen as presented to users during the account creation process during the Relevant Time Period.

15.     Attached hereto as **Exhibit B** is a true and accurate copy of Sweepsteaks Limited's internal account record displaying the date that Plaintiffs created their respective accounts.

16. Plaintiff Torres and Plaintiff Michie both later accepted an updated versions of the Terms on August 12, 2025.

17. When Plaintiffs accepted the updated Terms, the Platform displayed a mandatory acceptance window which, like the registration screen, displayed the Terms in a scroll window and required users to scroll to the end of the Terms before checking a box to indicate that they had read and agreed to the updated Terms. Each Plaintiff viewed this window and checked the box to indicate that he read and accepted the Terms and Conditions on August 12, 2025.

18. Attached hereto as **Exhibit C** is a true and accurate depiction of the mandatory acceptance window as it would have appeared to Plaintiffs on August 12, 2025.

19. Attached hereto as **Exhibit D** is a screenshot that truly and accurately depicts Sweepsteaks Limited's internal account record displaying the dates that Plaintiffs accepted the updated Terms.

20. Attached hereto as **Exhibit E** is a true and accurate copy of the Terms in effect at the time Plaintiff created their user accounts.

21. Attached hereto as **Exhibit F** is a true and accurate copy of the Terms in effect at the time Plaintiffs accepted the updated Terms on August 12, 2025.

22. During the Relevant Time Period, each version of the Terms has contained an Arbitration Agreement. Under the Arbitration Agreement, Sweepsteaks Limited and Plaintiffs agreed to arbitrate any and all disputes between them, including disputes arising out of or related in any way to the Terms and Plaintiffs' participation in or other access to or use Platform or the games available on it.

23. The Arbitration Agreement also applies to disputes between a user and any of Sweepsteaks Limited's "affiliates, subsidiaries, ultimate parent and parent companies, partners, officers, directors, employees, contractors, shareholders, agents, licensors, subcontractors or suppliers."

24. Plaintiff and Sweepsteaks Limited also agreed to resolve any question regarding the existence, validity, enforceability, or termination of these Terms and Conditions or the Arbitration Agreement in arbitration.

25. During the Relevant Time Period, each version of the Terms has contained a Class Action Waiver. The Plaintiff agreed to waive their right to, among other things, participate in a class action as a representative or member of a class.

26. The Terms also advise users that, by engaging in activity on the Platform, they confirm that they have read and agree to be bound by the Terms and any subsequent updates made thereto. Users who do not wish to be bound by the Terms are advised that they may not continue to access the Platform or play any of the Platform's games. Plaintiff continued to use the Platform throughout the Relevant Time Period.

27. The Arbitration Agreement calls for arbitration administered by the American Arbitration Association ("AAA") and incorporates by reference the AAA rules.

28. Attached hereto as **Exhibit G** is a true and accurate copy of the AAA Consumer Arbitration Rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on February 5, 2026

By: *Jarrod Febbraio*
—6689E078C7D14C5...
Jarrod Anthony Febbraio