**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

NATHANIEL TORRES and RORY MICHIE, individually and on behalf of all others similarly situated,

*Plaintiffs*,

v.

SWEEPSTEAKS LIMITED, ADIN ROSS, and AUBREY DRAKE GRAHAM

*Defendants*.

Case No.: 1:25-cv-1292 KG/JMR

**DEFENDANT AUBREY DRAKE GRAHAM'S MOTION TO DISMISS**
**FOR LACK OF PERSONAL JURISDICTION AND MEMORANDUM IN SUPPORT**

# MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Defendant Aubrey Drake Graham respectfully requests that the Court dismiss Plaintiffs' claims against him for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).

Exercising jurisdiction over Mr. Graham would be inconsistent with the New Mexico long-arm statute and due process. Mr. Graham is not subject to general jurisdiction in New Mexico because he is not "at home" in the state. Nor is Mr. Graham subject to specific jurisdiction in New Mexico. Plaintiffs have failed to meet their burden of showing that Mr. Graham took any act to purposefully avail himself of New Mexico law or the New Mexico market. Because Plaintiffs have not shown, and cannot show, that Mr. Graham expressly aimed his conduct at the state of New Mexico or its residents, the Court cannot exercise personal jurisdiction over Mr. Graham. The Court should therefore grant Mr. Graham's motion and dismiss Plaintiffs' claims against him for lack of personal jurisdiction.

In support of this Motion, Mr. Graham submits the accompanying Memorandum in Support and Declaration. Mr. Graham reserves the right to join Defendant Sweepsteaks Limited's anticipated motion to compel arbitration if the Court denies this motion.

[*signature page follows*]

Dated: September 7, 2026

Respectfully submitted,

AUBREY DRAKE GRAHAM

By: */s/Robert W. Ward*

A. Jeff Ifrah (No. 26-23)
Robert W. Ward (No. 25-437)
IFRAH PLLC
1717 Pennsylvania Avenue NW, Suite 650
Washington, D.C. 20006
Tel. (202) 524-4140
Fax (202) 524-4141
Email: jeff@ifrahlaw.com
rward@ifrahlaw.com

*Counsel for Defendant Aubrey Drake Graham*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .......... 1

FACTUAL BACKGROUND .......... 2

ARGUMENT .......... 3

A. The Court lacks general jurisdiction over Mr. Graham .......... 4

B. The Court lacks specific jurisdiction over Mr. Graham .......... 4

CONCLUSION .......... 11

## TABLE OF AUTHORITIES

**Cases**

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) ........ 5

*Bustos v. Ryder Truck Rental, Inc.*,
No. 1:23-cv-00679-DHU-JHR, 2024 WL 2260786 (D.N.M. May 17, 2024) ........ 7

*Calder v. Jones*,
465 U.S. 783 (1984) ........ 7

*Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*,
514 F.3d 1063 (10th Cir. 2008) ........ 1, 7, 8

*Helicopteros Nacionales de Colombia S.A. v. Hall*,
466 U.S. 408 (1984) ........ 8

*Hernandez v. Chevron U.S.A., Inc.*,
347 F. Supp. 3d 921 (D.N.M. 2018) ........ 4

*Home–Stake Prod. Co. v. Talon Petroleum, C.A.*,
907 F.2d 1012 (10th Cir.1990) ........ 8

*Melea, Ltd. v. Jawer SA*,
511 F.3d 1060 (10th Cir. 2007) ........ 4

*Newsome v. Gallacher*,
722 F.3d 1257 (10th Cir. 2013) ........ 10

*Old Republic Ins. Co. v. Continental Motors, Inc.*,
877 F.3d 895 (10th Cir. 2017) ........ *passim*

*Radford v. Stollznow*,
No. 14-cv-0334 SMV/SCY, 2014 WL 12789007 (D.N.M. Aug. 5, 2014) ........ 10

*Raffile v. Exec. Aircraft Maintenance*,
831 F. Supp. 2d 1261 (D.N.M. 2011) ........ 8

*Shrader v. Biddinger*,
633 F.3d 1235 (10th Cir. 2011) ........ *passim*

*Tercero v. Roman Catholic Diocese of Norwich, Conn.*,
132 N.M. 312 (2002) ........ 3

*Walden v. Fiore*,
571 U.S. 277 (2014) ........ 4, 8

*Whiting v. Hogan*,
855 F. Supp. 2d 1266 (D.N.M. 2012) ........ 3

**Statutes**

NMSA § 38-1-16 .......... 3

**Rules**

Federal Rule of Civil Procedure 12 .......... *passim*

## PRELIMINARY STATEMENT

Plaintiffs ask the Court to exercise jurisdiction over Defendant Aubrey Drake Graham on the basis of nationally accessible internet livestreaming and social media content that does not mention, let alone target, the state of New Mexico. Due process principles prevent the Court from doing so. The Court should therefore grant Mr. Graham's motion to dismiss.

Plaintiffs allege that Defendant Sweepsteaks Limited has developed a global network of influencers, celebrities, and performance artists to promote illegal gambling on its Stake.us platform ("Stake"). According to Plaintiffs, Defendant Aubrey Drake Graham plays an important part in this story. They point to livestreams and social media posts on platforms like Instagram, Kick, and X, that are available to users across the United States and around the world. But absent from the story Plaintiffs seek to tell is any connection to New Mexico in particular. All Plaintiffs can do is condemn Mr. Graham for sharing Stake-related content aimed at a national, if not global, audience, content that is as accessible in any other state as it is in New Mexico.

But the Tenth Circuit has made clear that something more than mere accessibility is required. Even in-state effects are not enough. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1072 (10th Cir. 2008). Plaintiffs therefore cannot rely solely on the alleged effects on New Mexico residents to establish jurisdiction. *See id.* They must show that Mr. Graham expressly aimed his conduct toward New Mexico. *Id.* Because Plaintiffs have not made, and could not make, that showing, the Court cannot exercise personal jurisdiction over Mr. Graham. The Court must dismiss Plaintiffs' claims against him under Federal Rule of Civil Procedure 12(b)(2).

## FACTUAL BACKGROUND

Mr. Graham is a recording artist, songwriter, and entertainer. (*See* Declaration of Aubrey Drake Graham ("Graham Decl.") ¶ 3.) Part of his work involves collaborating with brands, creators, and other entertainers on a variety of social media platforms. (*Id.*) Plaintiffs allege that Defendant Sweepsteaks Limited uses Mr. Graham's "celebrity influence" to promote Sweepsteaks Limited's free-to-play social gaming platform, Stake.us ("Stake"). (Compl. ¶ 51.). Outside of the United States, Mr. Graham also promotes Stake.com, a separate platform that is not available to users in New Mexico or anywhere else in the United States. (*See id.* ¶¶ 32, 54.) Mr. Graham features the Stake brand on his social media accounts and livestreams gameplay on streaming platforms like Kick.com. (*Id.* ¶ 54.)

Plaintiffs assert that Mr. Graham's promotional activity is misleading and "encourage[s] impressionable users to gamble." (Compl. ¶ 52.) For example, they allege that, as part of its marketing scheme, Sweepsteaks Limited "fronts" Mr. Graham "house money," "so any reported losses are part of a marketing tactic designed to draw attention." (*Id.* ¶ 56.) They also allege that Mr. Graham, in his promotional role, "deceptively and fraudulently misrepresent[s]" that Stake.us is a "social casino," (*Id.* ¶ 79), although they do not identify any particular statement to that effect. Plaintiffs allege that by making these unidentified statements, Mr. Graham "influence[s] consumers in New Mexico to gamble with Stake.us." (*Id.* ¶ 9.)

Plaintiffs make much of Mr. Graham's status as a global celebrity. They point to Mr. Graham's large following on social media platforms like Instagram and X, alleging that displaying the Stake brand on some of the "most followed accounts in the world" "elevates Stake far beyond the typical world wide web platform." (*Id.* ¶ 52.)

But Plaintiffs have nothing to say about Mr. Graham's efforts to promote the Stake brand in New Mexico. Plaintiffs do not allege that Mr. Graham has produced or published Stake-related content that has featured, or even mentioned, the state. Nor do they allege that Mr. Graham has ever tailored any Stake-related content to the New Mexico market or New Mexico consumers. Instead, they allege only that Mr. Graham's conduct "influence[s] consumers in New Mexico and elsewhere to gamble" and "threatens the welfare of New Mexico residents." (*Id.* ¶¶ 9, 57.) Elsewhere, they concede that Mr. Graham's content is not directed at New Mexico in particular, but at other states as well (*Id.* ¶¶ 9, 54.)

This is consistent with both the global reach of social media in general and Mr. Graham's content in particular. Mr. Graham has never directed any Stake-related content at New Mexico consumers or the New Mexico market. (Graham Decl. ¶¶ 7-8.). He has never produced content, or sought to produce content for, a New Mexico-specific publication or platform. (*Id.* ¶ 7.) Nor has he otherwise tailored this content to New Mexico consumers or the New Mexico market. (*Id.* ¶¶ 7–8.) Instead, as with his other endeavors, Mr. Graham's Stake-related content reaches a broad, national—if not global—audience. (*See id.* ¶ 6.)

## ARGUMENT

A court must dismiss a complaint under Federal Rule of Civil Procedure 12(b)(2) when it lacks personal jurisdiction over the defendant. The Court can exercise personal jurisdiction over Mr. Graham only if doing so is consistent with New Mexico's long-arm statute, NMSA § 38-1-16, and the requirements of due process. *See Whiting v. Hogan*, 855 F. Supp. 2d 1266, 1279 (D.N.M. 2012) (citing *Tercero v. Roman Catholic Diocese of Norwich, Conn.*, 132 N.M. 312, 316 (2002)). Because the New Mexico long-arm statute is "coextensive with constitutional limitations that the

due-process clause imposes," the Court may exercise jurisdiction if doing so is consistent with due process. *Id.*

The plaintiff bears the burden of establishing personal jurisdiction. *Melea, Ltd. v. Jawer SA*, 511 F.3d 1060, 1065 (10th Cir. 2007). To survive a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), a plaintiff must make a prima facie showing of personal jurisdiction by presenting, by affidavit or other written materials, "facts that if true would support jurisdiction over the defendant." *Id.*

**A. The Court lacks general jurisdiction over Mr. Graham.**

Plaintiffs do not appear to allege that Mr. Graham is subject to general jurisdiction in New Mexico, and for good reason. "The test for general personal jurisdiction turns on whether the defendant is 'at home' within the forum state." *Hernandez v. Chevron U.S.A., Inc.*, 347 F. Supp. 3d 921, 941 (D.N.M. 2018) (citing *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)). For individuals, "the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Id.* For Mr. Graham, that is Texas. (Compl. ¶ 14.) To the extent a court outside of Texas could, in an exceptional case, assert general jurisdiction over Mr. Graham, Plaintiffs fail to allege any contacts with New Mexico that would satisfy due process' stringent demands. *See Old Republic Ins. Co. v. Continental Motors, Inc.*, 877 F.3d 895, 904 (10th Cir. 2017) (allegations of general jurisdiction subject to "more stringent" minimum contacts test).

**B. The Court lacks specific jurisdiction over Mr. Graham.**

That leaves specific jurisdiction. For a court to exercise specific jurisdiction "consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 n.6 (2014). Courts conduct a two-step inquiry

in determining whether this substantial connection exists, examining: (a) "whether the plaintiff has shown that the defendant has minimum contacts with the forum state," and, if so, (b) whether the defendant has presented a "compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Old Republic Ins. Co.*, 877 F.3d at 904 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–77 (1985)).

Central to the minimum contacts test is the requirement that the defendant must have "purposefully directed [his] activities at residents of the forum state." *Old Republic Ins. Co.*, 877 F.3d at 904. Mere "foreseeability of causing injury" in the forum state is not enough. *Id.* Instead, the defendant must have deliberately engaged in significant activities within the state. *Id.* Courts generally rely on three frameworks in determining whether a defendant's conduct satisfies the purposeful direction requirement: (1) continuing relationship with forum state residents; (2) deliberate exploitation of the forum state market; and (3) harmful effects in the forum state. *Id.*

Where a defendant's contacts with a forum arise out of "non-territorial" activities like "internet posting," courts distinguish between a defendant "intentionally directing [his] activity or operation *at* the forum state" and "just having the activity or operation accessible there." *Shrader v. Biddinger*, 633 F.3d 1235, 1240 (10th Cir. 2011). Courts must look to "indications that a defendant deliberately directed its message at an audience in the forum state." *Id.* at 1241. This emphasis on "intentionally directing internet content at the forum state," *id.*, is particularly important in cases like this one, where the sole basis offered for jurisdiction is Mr. Graham's social media content and Internet-based livestreams. As the Tenth Circuit has observed, focusing only on whether such content is accessible to forum state residents would, in effect, render the territorial limits of personal jurisdiction meaningless. *See id.* at 1240.

Because Plaintiffs cannot show that Mr. Graham intentionally directed his Stake-related content at a New Mexico audience, the Court cannot exercise personal jurisdiction over him. Plaintiffs allege that Mr. Graham has the following contacts with New Mexico:

- "Stake in particular pays online influencer-Defendants Adin Ross ("Ross") and Aubrey Drake Graham ("Drake") each millions of dollars yearly to engage in 'livestream' online casino gambling with Stake.com — which, as the name implies, does indeed influence consumers in New Mexico and elsewhere to gamble with Stake.us." (Compl. ¶ 9.)
- "[W]hen Ross and Drake purport to gamble online with Stake.com, they often do not do so with their own money despite telling the public in New Mexico and elsewhere the opposite. This fact is not shared with the public in New Mexico by Stake and/or Ross and/or Drake." (*Id.*)
- "Stake's influencer marketing, especially through Drake and Ross, is directed among others at teenagers in New Mexico and in other states." (*Id.* ¶ 54)
- Stake's and Drake's and Ross's conduct here threatens the welfare of New Mexico residents and especially its young people. (*Id.* ¶ 57.)

In short, Plaintiffs allege that Mr. Graham's Stake.us-related content is accessible, and may have effects in, New Mexico and other states. But they do not allege that Mr. Graham "deliberately directed [his] message" at a New Mexico audience. *Shrader*, 633 F.3d at 1241.

As a result, neither the continuing relationship nor the deliberate exploitation framework confer jurisdiction here. Plaintiffs do not, for example, allege that Mr. Graham has ongoing, case-related relationships of any kind with New Mexico residents. *See Old Republic Ins. Co.*, 877 F.3d

at 905 (court may exercise specific jurisdiction where defendant entered contractual relationship that envisions ongoing relationship and wide-reaching contacts in forum). Nor do Plaintiffs meaningfully allege that Mr. Graham had has any "sales" or "customers" in New Mexico, let alone the kind of high sales volume and large customer base and revenue that would establish jurisdiction under the deliberate exploitation framework. *Cf. Bustos v. Ryder Truck Rental, Inc.*, No. 1:23-cv-00679-DHU-JHR, 2024 WL 2260786, at *9 (D.N.M. May 17, 2024) (jurisdiction existed under deliberate exploitation framework where defendant operated business, maintained New Mexico customer base, generated revenue in New Mexico, and directed advertising at New Mexico). To the contrary, Plaintiffs allege nothing about the size of Mr. Graham's New Mexico audience, let alone the revenue that audience generates.

The only potentially relevant framework, then, is the harmful effects framework. But any attempt to invoke this framework would fail too. The harmful effects framework is grounded in the Tenth Circuit's narrow reading of the standard set out in the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783, 789–90 (1984). To establish jurisdiction under the harmful effects framework, a plaintiff must demonstrate: "(a) an intentional action" that was "(b) expressly aimed at the forum state" with "(c) knowledge that the brunt of the injury would be felt in the forum state." *Dudnikov*, 514 F.3d at 1072. Accordingly, it is not enough for a defendant's content to be accessible in the forum state; the forum state must be the "focal point" of the defendant's conduct. *Shrader*, 633 F.3d at 1244 (quoting *Dudnikov*, 514 F.3d at 1074 n.9). Plaintiffs' failure to allege, and inability to show, that New Mexico was the "focal point" of Mr. Graham's Stake-related content is therefore fatal to jurisdiction under this framework too.

The only allegation that even suggests such targeting makes this plain. Because Plaintiffs cannot allege that Mr. Graham himself aimed any Stake-related content at New Mexico, they instead allege that *Sweepsteaks Limited's* influencer marketing is aimed at teenagers "in New Mexico and in other states." (Compl. ¶ 54.) Put differently, Plaintiffs appear to assert that the Court can exercise jurisdiction over Mr. Graham because teenagers in New Mexico are a subset of Stake's alleged target audience, teenagers in the United States. There are two problems with this theory.

*First*, it relies on an allegation that Sweepsteaks Limited, not Mr. Graham, targets New Mexico. *See Home–Stake Prod. Co. v. Talon Petroleum, C.A.*, 907 F.2d 1012, 1020 (10th Cir.1990) ("Minimum contacts must be found as to each defendant over whom the court exercises jurisdiction."). But even if Sweepsteaks Limited specifically targeted New Mexico customers, Plaintiffs could not satisfy the "defendant-focused 'minimum contacts' inquiry" by pointing to contacts between a third party—Sweepsteaks Limited—and New Mexico. *Walden*, 571 U.S. at 284 (2014); *see also Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 417 (1984) ("[The] unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction.")

*Second*, Plaintiffs' allegations themselves make clear that New Mexico is not the "focal point" of the relevant conduct. *Raffile v. Exec. Aircraft Maintenance*, 831 F. Supp. 2d 1261, 1270 (D.N.M. 2011) (citing *Dudnikov*, 514 F.3d at 1074 n.9) As Plaintiffs put it, Sweepsteaks Limited's marketing is "directed among others at teenagers in New Mexico *and elsewhere*." (Compl. ¶ 56 (emphasis added).) So even if Sweepsteaks Limited's marketing strategy could be imputed to Mr. Graham, this allegation would suggest nothing more than that Mr. Graham's content is accessible

"in every state regardless of where the [viewer] is physically located." *Shrader*, 633 F.3d at 1240 (internal quotation marks omitted). It therefore cannot establish personal jurisdiction under the harmful effects framework.

Even the media reporting Plaintiffs point to in an apparent effort to establish "targeting" refers to Mr. Graham only once, stating that "rapper Drake has become an official partner of Stake, and the site has sponsored a handful of other influencers." [1] And the article focuses on adolescents across the United States—it does not mention New Mexico at all.[2] Nor do any of the other articles Plaintiffs cite. (*See* Compl. ¶¶ 9 n.2, 55 n.23) Like Plaintiffs' own allegations, then, the reporting on which Plaintiffs rely shows only that Mr. Graham's content is accessible nationwide. *See Shrader*, 633 F.3d at 1241 (defendant not subject to personal jurisdiction merely because website is accessible in forum state).

That is not enough to establish personal jurisdiction. Courts routinely reject the assertion that a defendant's nationally accessible internet content alone establishes the required contacts with the forum state. In *Shrader*, for example, the Tenth Circuit noted that the defendant web forum operators could be subject to specific jurisdiction if they had intentionally directed the web forum at the forum state, there, Oklahoma. 633 F.3d at 1242. But because there was no indication that the

[1] Justin Horowitz, *Influencers and right-wing figures are promoting crypto gambling and sports betting to young viewers online.* Media Matters for America, (May 2, 2023), https://www.mediamatters.org/amazon/influencers-and-right-wing-figures-are-promoting-crypto-gambling-and-sports-betting-young ("*Influencers*").

[2] For example, the article states: "The legal age to gamble in the United States is 18 or 21 years old depending on the state. This has not stopped influencers and gambling and sports betting companies from promoting their products and games to adolescents." *See Influencers*, https://www.mediamatters.org/amazon/influencers-and-right-wing-figures-are-promoting-crypto-gambling-and-sports-betting-young.

forum targeted an Oklahoma audience, plaintiff could not establish that the court had specific jurisdiction over the web forum's operators. *See id.*

The same is true here. At most, Plaintiffs allege that some unknown number of New Mexico residents have accessed Mr. Graham's nationally accessible social media content and viewed Stake-related content. Like the plaintiff in *Shrader*, Plaintiffs here have not alleged that Mr. Graham "targeted" a forum-state audience. 633 F.3d at 1242. To the contrary, Plaintiffs' allegations show that Mr. Graham's content is "'centered' in the internet, not particularly New Mexico." *Radford v. Stollznow*, No. 14-cv-0334 SMV/SCY, 2014 WL 12789007, at *9 (D.N.M. Aug. 5, 2014). And because Mr. Graham has never mentioned New Mexico, sought out or relied on New Mexico-specific marketing channels, or otherwise tailored any Stake.us-related content to the New Mexico market, his content has "no particular connection to New Mexico" at all. *See id.*

The absence of targeting alone establishes that the Court cannot exercise jurisdiction over Mr. Graham under the harmful effects framework. But that is not the only reason the harmful effects framework fails to establish jurisdiction here. Also fatal to jurisdiction under this framework is the absence of any suggestion that Mr. Graham knew that the brunt of the injury—to the extent there has been any injury at all—would be felt in New Mexico. In any event, because Mr. Graham did not produce any Stake-related content with the purpose of targeting a New Mexico audience, or even with the understanding that it would target a New Mexico audience, Plaintiffs could not satisfy this requirement. *Cf. Newsome v. Gallacher*, 722 F.3d 1257, 1269 (10th Cir. 2013) (knowledge requirement satisfied where defendants knew plaintiff business operated exclusively in forum state). Accordingly, even if Plaintiffs have alleged that Mr. Graham's conduct has had

some effects in New Mexico, without more, the harmful effect framework does not confer jurisdiction here. *See Old Republic Ins. Co.*, 877 F.3d at 908.

## CONCLUSION

Because Plaintiffs have failed to make a prima facie showing of personal jurisdiction, the Court must dismiss their claims against Mr. Graham under Federal Rule of Civil Procedure 12(b)(2). Should the Court deny this motion, Mr. Graham reserves the right to join in Defendant Sweepsteaks Limited's anticipated motion to compel arbitration.

Dated: September 7, 2026

Respectfully submitted,

AUBREY DRAKE GRAHAM

By: */s/Robert W. Ward*

A. Jeff Ifrah (No. 26-23)
Robert W. Ward (No. 25-437)
IFRAH PLLC
1717 Pennsylvania Avenue NW, Suite 650
Washington, D.C. 20006
Tel. (202) 524-4140
Fax (202) 524-4141
Email: jeff@ifrahlaw.com
rward@ifrahlaw.com

*Counsel for Defendant Aubrey Drake Graham*

## CERTIFICATE OF SERVICE

I certify that on September 7, 2026, I filed Defendant Aubrey Drake Graham's Motion to Dismiss, Memorandum in Support, and Declaration in Support using the Court's CM/ECF system, which delivered a copy by email to all counsel of record.

*/s/Robert W. Ward*
Robert W. Ward

*Counsel for Defendant*
*Aubrey Drake Graham*