**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

NATHANIEL TORRES and RORY MICHIE, individually and on behalf of all other similarly situated,

*Plaintiffs*,

v.

SWEEPSTEAKS LIMITED, ADIN ROSS, and AUBREY DRAKE GRAHAM,

*Defendants*.

Case No.: 1:25-cv-1292-KG-KK

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS ADIN ROSS AND AUBREY DRAKE GRAHAM'S MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

This case presents a straightforward but consequential question: whether Defendants—who profit from promoting an illegal online gambling platform to millions of users nationwide, including in New Mexico—can evade accountability in this forum by disclaiming any intent to target the state. They cannot. Defendants' argument rests on an artificially narrow view of their own conduct, ignoring both the realities of modern digital marketing and well-established principles governing personal jurisdiction.

Defendants are not passive actors whose Internet content happens to drift into New Mexico. They are sophisticated commercial entertainment promoters who deliberately exploit the New Mexico market by partnering with an illegal online casino platform, streaming interactive gambling content, and monetizing their influence through subscriptions, referrals, and engagement-driven revenue. Their business model depends on reaching as many users as possible, including New Mexico residents, and converting that reach into gambling activity on Stake.us.

Having intentionally cultivated and profited from a nationwide audience, Defendants cannot now claim surprise that their conduct gives rise to legal process where that harm occurs.

At a minimum, the present record—viewed under the lenient prima facie standard—easily supports the exercise of specific jurisdiction. And to the extent any factual gaps remain, they are the product of Defendants' exclusive control over important jurisdictionally significant information. Under these circumstances, the Court should either deny the motions outright or order targeted jurisdictional discovery to resolve any remaining disputes.

**BACKGROUND**

This case concerns Defendants' operation of an illegal online casino—a practice that is explicitly outlawed in every state in the country—that public personalities like Defendants superstar rapper Aubrey Drake Graham ("Drake") and online influencer Adin Ross ("Ross") aggressively help promote.

When state gambling restrictions blocked Defendant Sweepsteaks Limited ("Stake") from introducing its online casino gambling platform Stake.com to the U.S. market, it created Stake.us, a virtual clone of the platform rebranded as a "social casino" to mislead regulators and consumers. Compl. ¶¶ 1-2. The Stake.us website purports to exclude users from states where its platform is prohibited. *Id.* ¶ 40. But despite New Mexico's clear prohibition on online casino gambling, Stake makes Stake.us available to New Mexico residents. *Id.* ¶¶ 6, 21-22.

Stake partners with influencers like Drake and Ross to steer commercial traffic to Stake.us. *Id.* ¶ 9, 47. Stake pays Drake and Ross millions of dollars per year to promote Stake across their online platforms and influence consumers in New Mexico and nationwide to gamble on Stake.us. *Id.* ¶ 9. Drake and Ross frequently broadcast their Stake gameplay on online livestreaming platforms such as Kick.com, which allows viewers to interact with Drake and Ross and with each

other through a live chat function. *Id.* ¶ 53. Indeed, the promotion of Stake is the very reason for Kick.com's existence—Stake's founders launched Kick.com using Stake profits. *Id.* The platform offers streamers like Drake and Ross 95% of the revenue they earn when viewers subscribe to their Kick.com channel. *Id.* Stake also fronts Drake and Ross "house money" to use during their livestreams, meaning that any losses they purport to suffer are part of a marketing tactic designed to draw further attention to their promotional content. *Id.* ¶ 54.

Drake is Stake's most prominent partner and is heavily featured on both Stake.us and Stake.com. *Id.* ¶ 51. The Stake.us website dedicates an entire webpage to Drake and states that he was "a long-time member of the Stake community," after which a "partnership was formed" where "a new gaming experience" allows users to "have a chance to win big alongside Drake . . . on a magnitude unseen before." *Id.* Drake also advertises Stake in the profile descriptions and posts on his Instagram and X accounts, which reach over 142 million and 38 million followers respectively. *Id.* ¶ 52. Experts have referred to Drake's aggressive marketing as the "Drake Effect" because it has massively boosted Stake's popularity among Drake's impressionable fans. *Id.* ¶ 51.

Drake and Ross's promotion of Stake is particularly harmful because it is targeted at teenagers in New Mexico and nationwide. *Id.* The National Institutes of Health found that online gambling puts teenagers' mental health and well-being "at serious risk." *Id.* ¶ 57. Yet as gambling addiction rises among adolescents, Drake and Ross continue to promote online gambling to their young audiences. *Id.* ¶ 54-56.

Drake and Ross's conduct directly and unlawfully threatens the welfare of New Mexico residents, especially its young people. *Id.* ¶ 57. Plaintiffs Nathaniel Torres and Rory Michie are two of many New Mexico residents that have lost money gambling in Stake's online casino because of Defendants' deceptive sales tactics. *Id.* ¶ 9, 11-12.

## LEGAL STANDARD

To defeat a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists. *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). The plaintiff's burden of proving jurisdiction at the pleadings stage is "light." *AST Sports Science, Inc. v. CLF Dist.*, 514 F.3d 1054, 1056 (10th Cir. 2008). The Court may consider affidavits and others evidentiary materials, but "[t]he allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits," and the Court must resolve all factual disputes in the plaintiff's favor. *Wenz*, 55 F.3d at 1505.

As New Mexico's long-arm statute authorizes personal jurisdiction to the full extent constitutionally permitted, Plaintiffs need only make a prima facie showing that exercising jurisdiction comports with the Due Process Clause of the Fourteenth Amendment. *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006). Due process requires both that the defendant "purposefully established minimum contacts within the forum State" and that the "assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)).

Where a court lacks general jurisdiction, the "less stringent standard" of specific jurisdiction applies if the defendant's contacts with the forum state are "sufficiently related to the cause of action." *Id.* at 904. Courts in the Tenth Circuit conduct a two-step inquiry when deciding if specific jurisdiction exists: (1) whether the plaintiff makes a prima facie showing that the defendant has minimum contacts with the forum state; and, if so, (2) whether the defendant has presented a "compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* 903. Defendants approach this analysis with the apparent view that,

because their content is purposely delivered to saturate *every* jurisdiction, they can be held accountable in none. This argument fails on the law and the principles of justice that underpin it.

## ARGUMENT

### I. The Court Has Specific Jurisdiction Over Defendants Ross and Drake.

Plaintiffs have made a prima facie showing that the Court has specific jurisdiction over Drake and Ross because Plaintiffs' cause of action arises out of their promotion of Stake within New Mexico. A defendant has established minimum contacts sufficient to support specific jurisdiction when the defendant "purposefully directed its activities at residents of the forum state," and the plaintiff's injuries "arise out of the defendant's forum-related activities." *Old Republic*, 877 F.3d at 904 (citing *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011)). The Court can find purposeful direction using any of three frameworks: (1) continuing relationships with forum state residents; (2) deliberate exploitation of the forum state market; and (3) harmful effects in the forum state. *Id.* at 905. A plaintiff's injuries "arise out of" a defendant's forum-state activities when there is an "affiliation between the forum and the underlying controversy," such as an activity or an occurrence that takes place in the forum state. *Id.* at 908. Defendants are not shielded from jurisdiction simply because their intended conduct, and the harm that accompanies it, extends beyond the forum state. That Defendants saturate social media sites so that there is not a jurisdiction unaffected by their conduct does not somehow insulate them from accountability in any of them.

Despite Defendants' attempts to minimize its significance, their extensive online promotion of Stake constitutes "market exploitation" sufficient to establish minimum contacts with New Mexico. Factors suggesting market exploitation include a large customer base and high sales volume and revenue in the forum state, as well as extensive nationwide advertising or ads targeting

the forum state. *Id.* at 914-15. This test is derived from the Supreme Court's holding in *Keeton v. Hustler Magazine, Inc.*, that a defendant's regular circulation of its nationally published magazine within the forum state established minimum contacts with the state. 465 U.S. 770, 774-75 (1984). The court found that a defendant conducting "part of its general business" in a forum state, even though not substantial enough to establish general jurisdiction, can be sufficient to support specific jurisdiction where the cause of action arises out of the business activity. *Id.* at 779-80. Although *Keeton* involved the publication of physical media, its logic applies equally to the promotional content Defendants publish online. *See Old Republic*, 877 F.3d at 906 ("The lower courts have since extended [the market exploitation framework] to specific jurisdiction cases involving internet content."). In fact, the Tenth Circuit has favorably cited cases holding that courts can exercise specific jurisdiction based on a defendant's exploitation of the forum state market through the internet. *See, e.g.*, *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 427-28 (7th Cir. 2010) (holding that a defendant exploited the forum state's market by causing forum state residents to flock to its website through "extensive national advertising" that included celebrity sponsorships), *cited with approval in Old Republic*, 877 F.3d at 906.

Plaintiffs plausibly allege that their injuries arise out of Defendants' deliberate exploitation of the New Mexico market through their aggressive, nationwide promotion of Stake across online platforms. Indeed, Stake has invested millions of dollars into its promotional partnerships with Drake and Ross precisely because of their unrivaled power to influence young people nationwide. *See* Compl. ¶¶ 9, 51-57. Drake and Ross engage in "extensive nationwide advertising" by frequently livestreaming their Stake gameplay on Kick.com. *Id.* ¶ 53. Viewers of these livestreams can subscribe to Defendants' Kick.com channels by paying a subscription fee, 95% of which goes directly to Drake and Ross. *Id.* Plaintiffs are just two examples of New Mexico residents who

Drake and Ross have influenced to gamble on Stake.us through their livestreams. Drake also promotes Stake on his Instagram and X accounts, which reach over 142 million and 38 million followers respectively. *Id.* ¶ 52. This advertising reaches consumers throughout New Mexico and drives new paying customers to Stake.us, as well as new subscribers to Drake and Ross's Kick.com channels.

Without discovery, Plaintiffs cannot conclusively quantify Defendants' customer base, sales volume, and revenue in New Mexico. But the court can reasonably infer from Drake and Ross's regular promotion of Stake to their millions of followers, their widely reported influence over their young, impressionable fans, and the millions of dollars that Stake has invested into their promotional partnerships that Drake and Ross's extensive online promotion of Stake reaches enough consumers and raises enough revenue to constitute "continuous and deliberate exploitation" of the New Mexico market. *See Old Republic*, 877 F.3d at 905-06. Further, Plaintiffs' injuries "arise out of" this market exploitation because Drake and Ross's deceptive online promotional content influenced Plaintiffs to gamble on Stake's illegal online casino in New Mexico. As Plaintiffs have made a prima facie showing that Drake and Ross established minimum contacts with New Mexico by deliberately exploiting its market, the Court can exercise specific jurisdiction.

For similar reasons, Plaintiffs make a prima facie showing of specific jurisdiction under the "harmful effects" framework. When applying this test in the internet context, "courts look to indications that a defendant deliberately directed its message at an audience in the forum state and intended harm to the plaintiff occurring primarily or particularly in the forum state." *Old Republic*, 877 F.3d at 917 (quoting *Shrader*, 633 F.3d at 1241). The Ninth Circuit's decision in *Mavrix Photo, Inc. v. Brand Techs., Inc.*, is persuasive on this point. 647 F.3d 1218 (9th Cir. 2011). In that case,

the plaintiff sued a website operator that had a national audience, with no evidence that it had marketed specifically towards the forum state. *Id.* at 1230. Nevertheless, the Ninth Circuit concluded that the plaintiff presented a prima facie case of specific jurisdiction because consumers' engagement with the defendant's website in the forum was not "random, fortuitous, or attenuated" but "a predictable consequence of its business model." *Id.* The Court noted that "where, as here, a website with national viewership and scope appeals to, and profits from, an audience in a particular state, the site's operators can be said to have 'expressly aimed' at that state." *Id.* at 1231. *Id.* The Ninth Circuit explained that to hold otherwise would inappropriately allow defendants "whose websites exploit a national market to defeat jurisdiction in states where those websites generate substantial profits from local consumers." *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473-74 (1985)).

Like the defendant in *Mavrix*, Drake and Ross fully expect and intend for their content to be broadly consumed by users all over the nation, including in New Mexico. Plaintiffs do not rely on the "mere fact" that Defendants' content is accessible in New Mexico, as Defendants suggest. The Court can reasonably infer from Plaintiffs' allegations that Drake and Ross target some of their extensive promotional efforts at New Mexico and generate substantial profits from New Mexico residents. Further, Plaintiffs plausibly allege that Drake and Ross "acted willfully" and "intended to mislead Plaintiffs" through their deceptive marketing within New Mexico. *See* Compl. ¶ 76. That Defendants also direct their promotional content at other states does not undermine that New Mexico was the "focal point" of the promotional content that harmed Plaintiffs in New Mexico. To determine as much would, contrary to the logic articulated in *Mavrix*, shield from liability any actor whose harmful content is spread throughout the United States. Thus, Plaintiffs make a prima facie showing that Drake and Ross deliberately direct their online

promotion of Stake at New Mexico with the intent to cause harm to New Mexico residents, and the Court can exercise specific jurisdiction on that basis.

Defendants' attempt to enforce contracts that Plaintiffs supposedly entered into in New Mexico also supports jurisdiction. Under the contract-based "continuing relationships" framework, the parties' prior negotiations, the contemplated future consequences and terms of the contract, and the parties' course of dealing can establish contacts with New Mexico sufficient to satisfy the purposeful direction requirement. *Old Republic*, 877 F.3d at 905 (citing *Burger King*, 471 U.S. at 479). Defendants argue in their Motion to Compel Arbitration and Stay Proceedings that Drake and Ross were intended third-party beneficiaries of purported arbitration agreements between Plaintiffs and Stake and that they can enforce those agreements through estoppel based on Plaintiffs' detailed allegations regarding Drake, Ross, and Stake's coordinated efforts to mislead consumers. Doc. 18 at 15-17. In Defendants' view, Plaintiffs entered into contracts with Stake when they allegedly accepted Stake's terms in New Mexico; the terms of those contracts deprive courts in New Mexico of jurisdiction over New Mexico residents' state law claims against Drake and Ross; and this impact on New Mexico was a contemplated future consequence of the contracts. But Drake and Ross cannot argue that they had no contacts with New Mexico in one motion while seeking the benefits of their contract-related contacts with New Mexico in another. While Plaintiffs do not concede that contracts formed between Plaintiffs and Stake or that Drake and Ross can enforce those purported contracts, Defendants' characterization of the contractual dealings is a relevant additional factor that weighs in favor of exercising specific jurisdiction.

When, as here, a plaintiff establishes minimum contacts, the defendant can only defeat jurisdiction by "present[ing] a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Pro Axess, Inc. v. Orlux Distribution*, 428 F.3d 1270,

1280 (10th Cir. 2005). Courts determine whether jurisdiction is reasonable based on five factors: "(1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies." *Id.* at 1279-80.

Drake and Ross fail to meet this "exacting standard," *id.*, because neither point to anything that would make this Court's exercise of its jurisdiction over them unreasonable. Nor could they. As "modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity," and Drake and Ross live in the United States, they face no significant burden litigating this case in New Mexico. *See id.* (citing *Burger King*, 471 U.S. at 474). In contrast, Plaintiffs, who are ordinary consumers without access to the vast resources Defendants enjoy as celebrities and online influencers, would face hardship traveling out of state to vindicate their claims. *See id.* at 1281. These considerations also support that New Mexico is the "most efficient place to litigate this dispute" under the fourth factor. *Id.* Furthermore, New Mexico has a strong interest in adjudicating this case, which implicates interpretation of its laws and alleges injuries to its residents. *See id.* (quoting *OMI Holdings v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1096 (10th Cir. 1998)). And as Plaintiffs raise only New Mexico state law claims, this case does not "affect the substantive social policy interests of other states or foreign nations." *Id.*

Given that none of these factors weigh in Defendants' favor, Defendants do not present a "compelling case" that exercising specific jurisdiction would be unreasonable. Viewing the evidence in the light most favorable to Plaintiffs, the Court should find that Plaintiffs have made a prima facie showing and exercise specific jurisdiction over Drake and Ross.

## II. The Court Should Order Jurisdictional Discovery.

Plaintiffs have made a prima facie showing of personal jurisdiction over all defendants. However, if the Court requires an additional factual showing, Plaintiffs ask that the Court allay those concerns, not through dismissal, but by way of an order for limited jurisdictional discovery. This case was filed in the relatively recent past and is therefore procedurally young. Given its (thus naturally) undeveloped record and the fact-intensive nature of jurisdictional determinations, Plaintiffs respectfully suggest that the most prudent course is to grant Plaintiffs leave to conduct jurisdictional discovery and postpone ruling upon the pending motions until discovery on the topic can be completed.

When a defendant moves to dismiss for lack of personal jurisdiction, "***either party should be allowed discovery on the factual issues raised by that motion***." *Grynberg v. Ivanhoe Energy, Inc.*, 490 F. App'x 86, 102 (10th Cir. 2012) (quoting *Budde v. Ling-Temco-Vought, Inc.*, 511 F.2d 1033, 1035 (10th Cir. 1975) (emphasis added)). Jurisdictional discovery is intended to "allow the parties to flesh out allegations for which they initially have at least a modicum of objective support." *McManemy v. Roman Catholic Church of the Diocese of Worcester*, 2 F. Supp. 3d 1188, 1195 (D.N.M. 2013). A district court's denial of jurisdictional discovery prejudices a plaintiff, and is therefore an abuse of its discretion, when "pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Sizova v. Nat'l Inst. of Standards & Tech.*, 282 F.3d 1320, 1326 (10th Cir. 2002).

Plaintiffs genuinely dispute the purported facts found in the boilerplate declarations attached to Defendants' motions, which bear on the question of jurisdiction. Defendants' essentially identical claims that they have not "directed, tailored, or targeted [their] Stake.us-related promotional content specifically to New Mexico residents or to the New Mexico market"

and have never "created Stake.us-related content with the intention or understanding that [their] content would be used to advertise Stake.us specifically in the state of New Mexico," Docs. 16-1, 17-1, contradict Plaintiff's plausible allegations that Defendants' promotion of Stake ***is*** directed at young people in New Mexico. *See* Compl. ¶ 54-57. It is also noteworthy that while Defendants' declarations are substantially verbatim, Drake declines to adopt Ross's representation that he has no employees or agents in New Mexico—raising the obvious likelihood that he does.

If granted leave, Plaintiffs intend to serve the interrogatories and requests for production attached hereto as ***Plaintiffs' Exhibit 1***, which are tailored to helping the Court resolve these factual inquiries. For example, Plaintiffs ask Drake and Ross to identify the number of New Mexico residents that have engaged with their Stake-related content across platforms, or that have used their referral links and promotional codes, based on the tools they use to track the geographic location of their viewers and followers. Plaintiffs also request information and communications regarding Drake and Ross's business dealings with Stake and efforts to target their promotional content at the New Mexico market. As Defendants are the only parties with access to this non-public information, which Plaintiffs need to refute the unsupported statements in their declarations, the Court will prejudice Plaintiffs if it denies discovery. *Cf. Wilkinson v. Maese*, No. 1:20-CV-783 MIS/KRS, 2021 U.S. Dist. LEXIS 216653, at *8-9 (D.N.M. Nov. 8, 2021) (finding jurisdictional discovery necessary where the defendant "possesse[d] better access to information" the plaintiff needed to establish personal jurisdiction); *Applied Capital, Inc. v. ADT Corp.*, No. 1:16-cv-00815-WJ-SCY, 2017 U.S. Dist. LEXIS 16780, at *29 (D.N.M. Feb. 6, 2017) (granting jurisdictional discovery where there were insufficient facts from which the court could determine the frequency and volume of business that the defendant conducted in New Mexico through its website).

Accordingly, while as detailed below, Plaintiffs do sufficiently allege jurisdictional facts, should the Court determine that it is unable to exercise jurisdiction based on those allegations, it should defer ruling until such time as the proposed jurisdictional discovery can be completed.

**CONCLUSION**

Defendants' motions ask the Court to ignore both the practical realities of their conduct and the governing legal standard. Plaintiffs have plausibly alleged—and supported with evidence—that Defendants purposefully directed extensive online promotional activities toward a nationwide audience that includes New Mexico residents, thereby deliberately exploiting the New Mexico market, and that Plaintiffs' claims arise directly from those activities. That is sufficient to establish a prima facie case of specific jurisdiction.

At the very least, where key jurisdictional facts remain in Defendants' possession and are genuinely disputed, the Court should permit jurisdictional discovery before resolving the issue. To dismiss at this early stage would improperly reward Defendants' control over the evidentiary record and deny Plaintiffs a fair opportunity to develop facts central to the jurisdictional inquiry.

For these reasons, the Court should deny Defendants' motions to dismiss for lack of personal jurisdiction, or, in the alternative, grant Plaintiffs leave to conduct jurisdictional discovery and defer ruling on Defendants' motions until discovery concludes.

Respectfully Submitted By,

Christopher A. Dodd
Amber Fayerberg
FAYERBERG DODD, LLC
500 Marquette Avenue, NW
Suite 1330
Albuquerque, NM 87102
Tel. No. (505) 475-2742
chris@fayerbergdodd.com

amber@fayerbergdodd.com

Steven A. Schwartz
Beena M. McDonald
CHIMICLES SCHWARTZ KRINER
& DONALDSON-SMITH, LLP
361 W. Lancaster Avenue
Haverford, PA 19041
Phone: (610) 642-8500
sas@chimicles.com
bmm@chimcles.com

Garrett W. Wotkyns
CHIMICLES SCHWARTZ KRINER
& DONALDSON-SMITH LLP
18146 North 93rd Place
Scottsdale, AR 85225
Phone: (610) 642-8500
garrettwotkyns@chimicles.com

Jarrett L. Ellzey
Josh Sanford
Tom Kherkher
ELLZEY KHERKHER SANFORD
MONTGOMERY, LLP
4200 Montrose Blvd, Suite 200
Houston, Texas 77006
Telephone: (888) 350-3931
Fax: (888) 276-3455
jellzey@eksm.com
jsanford@eksm.com
tkherkher@eksm.com

*Attorneys for Plaintiff and the Proposed Class*

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was filed using the Court's ECF system on September 21, 2026 and was thereby served upon all counsel of record.

/s/ *Amber Fayerberg*
Amber Fayerberg
Counsel for Plaintiffs