**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

| | |
|---|---|
| NATHANIEL TORRES and RORY MICHIE, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>SWEEPSTEAKS LIMITED, ADIN ROSS, and AUBREY DRAKE GRAHAM,<br><br>*Defendants*. | Case No.: 1:25-cv-01292-KG-JMR |

**DEFENDANTS ADIN ROSS AND AUBREY DRAKE GRAHAM'S**
**REPLY IN SUPPORT OF THEIR MOTIONS TO DISMISS**

Defendants Adin Ross ("Ross") and Aubrey Drake Graham ("Graham") (collectively, the "Defendants") hereby jointly submit this reply in support of their Motions to Dismiss for Lack of Personal Jurisdiction. ECF No. 26 (the "Graham Motion"); ECF No. 27 (the "Ross Motion") (collectively, the "Motions"). In support, Defendants state:

**PRELIMINARY STATEMENT**

Plaintiffs' omnibus Opposition to Defendants' Motions to Dismiss for Lack of Personal Jurisdiction, ECF No. 28 (the "Opposition"),[1] fails to address several of the arguments set forth in Defendants' Motions and it fails to refute any of them. It also fails to supply any evidence whatsoever to support Plaintiffs' argument that Defendants' globally available internet activities specifically targeted the state of New Mexico or its consumers.

In the Motions, Defendants: (1) demonstrated that this Court does not have general jurisdiction over either Defendant, neither of whom has continuous and systematic contacts with New Mexico such that they might be considered "at home" here; (2) demonstrated that this Court does not have specific personal jurisdiction over either Graham or Ross because neither Graham nor Ross intentionally directed any content at New Mexico (and otherwise have no relevant contacts there); and (3) provided declarations under penalty of perjury categorically denying the few allegations in the Complaint related to Graham's and Ross's alleged contacts with New Mexico. On these grounds and the record before the Court, Defendants argued that the Complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(2).

The Opposition simply fails to respond to Defendants' argument regarding general personal jurisdiction—and Plaintiffs have thus waived any challenge. With regard to specific personal

[1] Given that Plaintiffs filed an omnibus Opposition in response to the Motions, Graham and Ross file this consolidated reply in support.

jurisdiction, Plaintiffs present a revised theory that jurisdiction is appropriate because Graham and Ross allegedly engaged in a nationwide advertising campaign by creating online content that was accessible in New Mexico. This theory, which would obviate any limit on personal jurisdiction, departs from the Stake-centric allegations in the Complaint, is presented without any factual support whatsoever, and finds no support in Tenth Circuit caselaw. It should be rejected. And it can be rejected without buying into Plaintiffs' specious argument that the granting of the Motions somehow results in a situation where the Defendants deliver content in all jurisdictions but can be held accountable in none. Opp. at 4–5.

Finally, the Opposition substantively ignores Defendants' declarations and instead requests jurisdictional discovery. This request fails on two independent grounds. *First*, it is procedurally improper because Plaintiffs buried it in their Opposition rather than filing a supported motion for discovery. *Second*, it is substantively deficient because Plaintiffs ignore Defendants' contrary evidence and otherwise fail to establish a prima facie case of personal jurisdiction.

For these reasons, and as set forth more fully below, the Court should dismiss the Complaint as to Graham and Ross pursuant to Federal Rule 12(b)(2).

## I. Plaintiffs Have Not Made a Prima Facie Case for Specific Personal Jurisdiction over Either Defendant.

The Opposition fails to address the core pleading deficiency identified in the Motions: that the Complaint does not contain factual allegations that either Graham or Ross purposefully availed themselves of the forum state—here, New Mexico. *See* Graham Mot. at 5-7; Ross Mot. at 5-9; *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 904 (10th Cir. 2017). Instead, the Opposition posits that personal jurisdiction is appropriate because "Plaintiffs' cause of action arises out of [Graham's and Ross's] promotion of Defendant Sweepsteaks Limited within New Mexico." Opp. at 5. Plaintiffs assert that this satisfies the deliberate exploitation requirement of specific personal jurisdiction under each of the three frameworks applied in the Tenth Circuit. *See* Ross Mot. at 5. It does not. This reply

addresses each framework in turn.

*a. Framework No. 1: Market Exploitation*

Plaintiffs argue that Graham's and Ross's "extensive online promotion of Stake constitutes 'market exploitation' sufficient to establish minimum contacts with New Mexico." Opp. at 5. They support this with several statements regarding Ross's and Graham's alleged promotion of Stake, including:

- "Stake has invested millions of dollars into its promotional partnerships with [Graham] and Ross precisely because of their unrivaled power to influence young people *nationwide*." Opp. at 6.
- "[Graham] and Ross engage in 'extensive *nationwide* advertising' by frequently livestreaming their Stake gameplay on Kick.com." Opp. at 6.
- "[Graham] and Ross fully expect and intend for their content to be broadly consumed by users *all over the nation*, including in New Mexico." Opp. at 8 (emphasis added).

These statements were neither present in the Complaint nor admitted by Defendants in the Motions. *Compare* Compl. ¶¶ 9, 54, 57, ECF No. 1, *with* Opp. at 6, 8. Indeed, the Opposition is the first and only document in this matter where Plaintiffs have accused Graham and Ross of engaging in an "extensive nationwide advertising" campaign. Therefore, the Court should not consider these statements in resolving Defendants' Motions. *See Great Bowery v. Best Little Sites*, 609 F. Supp. 3d 1240, 1246 (D. Utah 2022) ("The court . . . must treat all well-pled . . . factual allegations *in the complaint* as true, unless they are disputed by a declaration." (emphasis added)).

Regardless of when first alleged, these statements on their face admit that neither Graham nor Ross "deliberately targeted" New Mexico and are not sufficient to establish specific jurisdiction. Plaintiffs' theory seems to be that because Defendants' content was accessible globally, it must have been *expressly aimed* at each individual location where it could be accessed. In other words, Graham and Ross are subject to specific jurisdiction in New Mexico because they allegedly engaged in nationwide advertising by posting content accessible by consumers all over the nation, including New

Mexico.

The Court should reject Plaintiffs' argument because it is incongruent with Tenth Circuit caselaw. As explained in the Motions, courts in this Circuit have rejected the assertion that a defendant's nationally accessible internet content alone establishes the required minimum contacts with the relevant forum state. *See, e.g.*, Graham Mot. at 5, 9; *see also Old Republic*, 877 F.3d at 916; *Shrader v. Biddinger*, 633 F.3d 1235, 1240–41 (10th Cir. 2011). Indeed, in *Shrader*, the Tenth Circuit warned that focusing only on whether content was accessible to forum state residents would, in effect, render the territorial limits of personal jurisdiction meaningless, and "[t]o avoid this untenable result, it is necessary to adapt the analysis of personal jurisdiction to this unique circumstance by placing emphasis on the internet user or site *intentionally directing* [the] activity or operation *at* the forum state rather than just having the activity or operation accessible there." *Id.* at 1240 (emphasis in original).

Plaintiffs fail to meaningfully engage with *Shrader* or the other supporting cases cited by Ross and Graham in the Motions. This includes a recent decision from this Court illustrating a (distinguishable) scenario in which jurisdiction *would be* appropriate. *See Bustos v. Ryder Truck Rental, Inc.*, No. 1:23-cv-00679-DHU-JHR, 2024 WL 2260786, at *9 (D.N.M. May 17, 2024) (finding jurisdiction existed under deliberate exploitation framework where defendant operated business, maintained New Mexico customer base, and directed advertising at New Mexico, none of which has been established or even alleged with the Defendants here[2]). Instead, Plaintiffs cite to a trio of cases that either directly contradict their position (*Old Republic*) or are readily distinguishable on the facts (*Keeton v. Hustler Mag., Inc.*, 465 U.S. 770 (1984) and *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421 (7th Cir. 2010)).

Both *Keeton* and *GoDaddy* are distinguishable for the same reasons: the defendants in those

[2] The Opposition repeatedly conflates Stake's activities in New Mexico with those of the individual defendants. Neither Graham nor Ross is operating a business in New Mexico, has customers in New Mexico, or generates revenue for themselves in New Mexico by posting globally available advertisements for Stake.

cases were corporate defendants, not individuals, and the contacts these corporate defendants had with the relevant forum states were supported by evidence, not (as here) by the plaintiffs' say-so. For example, in *GoDaddy*, the court noted that "there is evidence . . . that GoDaddy (or its agent) has placed physical ads in particular Illinois venues" which "shows that this marketing campaign has already created substantial business for GoDaddy in Illinois." 623 F.3d at 428. The court also noted Illinois consumers had "flocked to GoDaddy by the hundreds of thousands and have sent many millions of dollars to the company each year." *Id.* at 427; *see also be2 LLC v. Ivanov*, 642 F.3d 555, 559 (7th Cir. 2011) (distinguishing *GoDaddy* and concluding that court lacked jurisdiction over defendant whose highly interactive website was available in, but did not target, Illinois). Similarly, in *Keeton*, the Supreme Court found that a magazine publisher could be called to New Hampshire because it circulated "10 to 15,000" copies of its magazine to subscribers in New Hampshire each month. 465 U.S. at 772. In short, the common thread in *Keeton* and *GoDaddy* is that evidence supported a finding that a corporate defendant was deliberately targeting the market of the forum state.

Further, the Tenth Circuit has not applied either *Keeton* or *GoDaddy* in the expansive manner Plaintiffs suggest. This Court need look no further than Plaintiffs' remaining authority, *Old Republic*, where the Tenth Circuit expressly considered both *Keeton* and *GoDaddy* when analyzing whether a corporate defendant should be subject to specific personal jurisdiction based on its online activity. The court *declined* to exercise jurisdiction on the basis of the defendant's website and sales of memberships to forum state customers. *Old Republic*, 877 F.3d at 914. After laying out the factors relevant to the market exploitation analysis, the court found that plaintiff had "not shown sufficiently extensive Colorado sales, revenues, or advertising relating to the FBO Program to support jurisdiction over [the corporate defendant] under the *Keeton* market exploitation framework." *Id.* at 915.

*Old Republic* makes clear that, under *Keeton*, an alleged "nationwide advertising campaign" that may impact one state of many does not automatically subject a corporate defendant to jurisdiction in

that state. And none of these cases—*Old Republic*, *Keeton*, or *GoDaddy*—supports a finding that an *individual* defendant can be haled into a foreign forum based on their broadly accessible online content. Finally, Plaintiffs have not presented any evidence that Graham or Ross sufficiently targeted or benefitted from New Mexico consumers (as compared to the "10 to 15,000" monthly publication in *Keeton*, 465 U.S. at 772, or the "hundreds of thousands" of Illinois consumers generating "many millions of dollars" in *GoDaddy,* 623 F.3d at 427).

*b. Framework No. 2: Harmful Effects*

Plaintiffs also argue that, "[f]or similar reasons," personal jurisdiction is appropriate under the "harmful effects" framework. Opp. at 7. For similar reasons, it is not. Defendants explained in the Motions that "Plaintiffs simply do not allege any facts which support exercising jurisdiction under this framework," Ross Mot. at 7, because the Complaint's allegations (1) rely on Plaintiffs' relationship with New Mexico (not Defendants'); (2) do not show that New Mexico was the "focal point" of Ross's or Graham's conduct, *see Eighteen Seventy, LP v. Jayson*, 32 F.4th 956, 969 (10th Cir. 2022); and (3) do not show that Graham or Ross had knowledge of any alleged injury or that the brunt of such injury would be felt in New Mexico. *See* Ross Mot. at 7–9; Graham Mot. at 7–11.

The Opposition fails to address any of these points. Although Plaintiffs attempt to recenter the Opposition around Ross's and Graham's alleged nationwide advertising campaign (including by adding allegations not found in the Complaint), they baselessly buttress their arguments with Stake's conduct (s*ee, e.g.*, Opp. at 6 (noting Stake's investment to "influence young people nationwide"), 9 (relying on Stake's alleged contracts with New Mexico consumers)) but fail to address Defendants' arguments about why that is improper. *See* Graham Mot. at 6, 8; Ross Mot. at 6.

Similarly, nothing in the Opposition supports the argument that Ross or Graham "expressly aimed" any content at New Mexico or had any "knowledge that the brunt of the injury would be felt" there. *See Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1072 (10th Cir. 2008). For

example, neither the Opposition nor the Complaint identifies a *single* piece of content where either Ross or Graham mentions New Mexico or encourage New Mexico residents to use Stake.

Absent such support—because it does not exist—Plaintiffs again rely on the theory that Graham's and Ross's content was allegedly aimed at a nationwide audience and therefore must necessarily have been aimed at New Mexico. *See, e.g.*, Opp. at 7–8 (suggesting what the "Court can reasonably infer"). As discussed above, even accepting this theory as true (for the sake of argument only), it admits that Graham's and Ross's content was not aimed at any jurisdiction in particular, much less "expressly aimed" at New Mexico. *See Dudnikov*, 514 F.3d at 1072. This theory says nothing about Graham's and Ross's "knowledge that the brunt of the injury would be felt" in New Mexico—indeed, the Opposition does not meaningfully engage with this element of the harmful effects test.[3]

Courts in the Tenth Circuit have rejected such tenuous connections to the forum state when analyzing the propriety of jurisdiction under the harmful effects test. *See, e.g.*, *Shrader; Old Republic*, 877 F.3d at 916–18. Put simply, it is not enough for a defendant's content to be accessible in the forum state; the forum state must be the "focal point" of the defendant's conduct. *Shrader*, 633 F.3d at 1244 (quoting *Dudnikov*, 514 F.3d at 1074 n.9). Perhaps recognizing this, Plaintiffs support their nearly unlimited theory of personal jurisdiction by relying solely on the "logic articulated" by the Ninth Circuit in *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218 (9th Cir. 2011). In *Mavrix*, the Ninth Circuit found that a company and its CEO were subject to specific personal jurisdiction in California because the celebrity gossip website they ran "used [plaintiff's] copyrighted photos as part of its exploitation of the California market for its own commercial gain." *Id.* at 1229. Plaintiffs' reliance is misplaced.

[3] Plaintiffs accuse Graham and Ross of "fully expect[ing] and intend[ing] for their content to be broadly consumed by users all over the nation, including in New Mexico." Opp. at 8. But this accusation is not in the Complaint, nor is it presented with any support besides Plaintiffs' say-so.

*First*, the defendants in *Mavrix* were a corporate entity (like the defendants in *Keeton*, *Old Republic*, and *GoDaddy*) and its CEO operated a website which targeted the California market. *Id.* at 1222. They are therefore distinct from Graham and Ross, who are individuals and have never targeted New Mexico with their content. *See generally* Graham Decl. ¶¶ 6–8, ECF No. 26-1; Ross Decl. ¶¶ 4–8, ECF No. 27-1.

*Second*, the Ninth Circuit's decision in *Mavrix* cannot be reduced to allowing jurisdiction when an entity or individual with a "national audience" has *any* contact with a particular forum. Rather, the court explained that, while the *Mavrix* defendant did not "market[] its website in California local media," it was "clear from the record that [defendant] operated a very popular website *with a specific focus on the California*—centered celebrity and entertainment industries." *Id.* at 1230. The court further explained that "[b]ased on the website's subject matter, as well as the size and commercial value of the California market . . . Brand anticipated, desired, and achieved a substantial California viewer base. This audience is an *integral component* of Brand's business model and its profitability." *Id.* Supporting this analysis was the defendants' "specific ties to California," which included: (1) making "money from third-party advertisements for jobs, hotels, and vacations in California"; (2) linking to a third-party vendor that "sells tickets to nationwide events," some of which "are in California"; (3) having agreements with several California businesses; (4) allowing a "California Internet advertising agency" to "solicit[] buyers and place[] advertisements" on their website; (5) having a "California wireless provider design[] and host[] on its servers a version of [defendants' website] accessible to mobile phone users"; (6) having a "California firm design[] the website and performs site maintenance"; and (7) entering into a "link-sharing" agreement with a California-based national news site. *Id.* at 1222.

Graham's and Ross's alleged promotion of Stake via online content available anywhere in the world is plainly distinguishable from the "specific focus" the Ninth Circuit relied on in *Mavrix*. Nothing in the Complaint or the Opposition suggests that New Mexico is a market of significant

commercial value to Graham or Ross, that Graham or Ross has any agreements with New Mexico-based entities, or that they otherwise took any action or had any relationship with New Mexico aside from their internet content being accessible there.

*Finally*, *Mavrix* is not binding on this Court. And it does not, even if persuasive, outweigh the several out-of-circuit cases cited by Ross and Graham in the Motions. *See, e.g.*, Ross Mot. at 9 (citing caselaw from various Circuits).

*c. Framework No. 3: Continuing Relationships (Contractual)*

Plaintiffs also argue that "Defendants' attempt to enforce contracts that Plaintiffs supposedly entered into in New Mexico also supports jurisdiction." Opp. at 9. This is incorrect as a matter of fact and law. As an initial matter, Graham and Ross unambiguously joined the Motion to Compel Arbitration and Stay Proceedings in the alternative and only then on narrow grounds. *See* ECF No. 18 at 1, 14–17.[4] The very first page of the Motion to Compel Arbitration and Stay Proceedings states: "Defendants Aubrey Drake Graham and Adin Ross join this motion *as alternative relief* to the relief sought in their earlier-filed motions to dismiss for lack of personal jurisdiction (ECF nos. 16 and 17) *and ask that the Court first decide those motions before ruling on this motion as to them*, if necessary." ECF No. 18 at 1 (emphasis added). Plaintiffs ignore this statement in their rush to claim that "[Graham] and Ross cannot argue that they had no contacts with New Mexico in one motion while seeking the benefits of their contract-related contacts with New Mexico in another." Opp. at 9.

Separately, the "continuing relationships" framework is inapplicable. Even if Graham and Ross had requested arbitration as their primary substantive argument, there is no allegation in the

---

[4] Defendants note that when staying this proceeding, this Court vacated "[a]ll pending deadlines associated with Defendants' Motions to Dismiss . . . and Motion to Compel Arbitration." Order, ECF No. 21 at 1. And when partially lifting the stay, this Court ordered Graham and Ross to "serve and file their respective Motions to Dismiss . . . ." ECF No. 25 at 1. Defendants understood this order to mean that the motions filed prior to the stay, including any motion to compel arbitration, would need to be refiled. If that is the case, as it was with the Motions to Dismiss, then Plaintiffs' argument in the Opposition refers to a motion that is not active.

Complaint that Graham or Ross has any agreement with any New Mexico consumer.[5] Opp. at 9. Both Defendants have also expressly disclaimed such contacts in the Motions. *See* Graham Mot. at 6 ("Plaintiffs do not, for example, allege that Mr. Graham has ongoing, case-related relationships of any kind with New Mexico residents."); Ross Mot. at 7 ("But the Complaint is devoid of any allegations that Mr. Ross has ongoing, suit-related relationships … with New Mexico residents."). Plaintiffs also fail to cite any authority supporting their contract-based argument—much less law that establishes personal jurisdiction based solely on a defendant's reservation of rights.

Plaintiffs do cite *Old Republic* for the applicable legal framework, but again ignore that case's reasoning and outcome. When discussing the "continuing relationships" framework, the Tenth Circuit counseled that a "defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction," *Old Republic*, 877 F.3d at 905 (quoting *Walden v. Fiore*, 571 U.S. 277, 286 (2014)), and then explained that courts "must evaluate the parties' 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing ... in determining whether the defendant purposefully established minimum contacts within the forum,'" *id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985)). The court then held that, based on "the absence of prior negotiations, long-term contractual commitments, or any significant course of dealing," plaintiff "failed to show purposeful direction under the continuing relationships framework." *Id.* at 910. As noted, Plaintiffs fail to allege any contract between Graham or Ross and Plaintiffs, and the Opposition is devoid of any analysis regarding the factors discussed in *Old Republic*.

* * *

In sum, Plaintiffs did not in the Complaint—and have not in the Opposition or via affidavit—

[5] The Opposition identifies the relevant contracts as between Plaintiffs and Stake. Opp. at 9.

present *a single piece of evidence* that either Graham or Ross targeted (or even mentioned) New Mexico in any of their publicly available content. Absent such evidence, Plaintiffs default to an application of the personal jurisdiction analysis which would attach jurisdiction to *any* individual who can "saturate social media sites" in *any* jurisdiction where that content might conceivably be viewed (*i.e.*, anywhere in the United States with internet access). Opp. at 5. As the court noted in *Shrader*, this would obviate the limits of personal jurisdiction. 633 F.3d at 1240–41. The Court should reject this absurd result and dismiss the Complaint as to Graham and Ross.

**II. Plaintiffs Are Not Entitled to Jurisdictional Discovery.**

Perhaps conceding that they have not met their burden, Plaintiffs request that this Court "grant Plaintiffs leave to conduct jurisdictional discovery and postpone ruling upon the pending motions until discovery on the topic can be completed." Opp. at 11. This Court should reject this request on two independent grounds.

*First*, courts are not required to "recognize 'a general request for discovery' made in a response to a Rule 12(b)(2) motion." *Nat'l Fair Hous. All. v. Brookdale Santa Fe*, 621 F. Supp. 3d 1271, 1284 (D.N.M. 2022) (quoting *World Wide Ass'n v. Houlahan*, 138 F. App'x 50, 52 (10th Cir. 2005)). Rather, a party is "required to file an 'explicit, supported motion for discovery.'" *Id.* Plaintiffs have not filed any such motion and instead petition the Court for discovery in a short request at the end of the Opposition based on their view that "[t]his case was filed in the relatively recent past"[6] and therefore, has an "undeveloped record." Opp. at 11. This is improper and "alone is sufficient for the Court to deny Plaintiffs' request for jurisdictional discovery." *Nat'l Fair Hous. All.*, 621 F. Supp. 3d at 1284.

*Second*, as discussed in detail above, Plaintiffs have not established a prima facie case for

[6] Defendants strongly contest this characterization. The Complaint was filed a year ago and both Graham and Ross first moved to dismiss for lack of personal jurisdiction in *February* 2026. *See* ECF Nos. 16, 17. Plaintiffs have been on notice of their pleading deficiencies for at least seven months, yet failed to move for limited jurisdictional discovery until faced with the Motions.

personal jurisdiction. Moreover, aside from flatly stating that they "genuinely dispute . . . the declarations" submitted by Graham[7] and Ross, Plaintiffs have not addressed the evidence presented by Defendants which supports a lack of personal jurisdiction. They did not amend the Complaint, did not file sworn declarations of their own, and did not otherwise present *any* evidence that Graham or Ross have any contacts with New Mexico. And, again, to date in this year of litigation, neither plaintiff has identified a single piece of content they interacted with or that Graham or Ross directed at New Mexico (*e.g.*, by referencing New Mexico or targeting New Mexico consumers). Instead, Plaintiffs present an unworkably expansive reading of the Tenth Circuit's personal jurisdiction jurisprudence, declare that they have stated a prima facie case against Graham and Ross, and then ask for discovery to prove what they did not (and could not) allege in the Complaint. The Court is not required to—and should not—grant this request. *See Nat'l Fair Hous. All.*, 621 F. Supp. 3d at 1283 ("The district court has broad discretion in determining whether to permit jurisdictional discovery."); *see also Quimby v. Cmty. Health Sys. Pro. Servs. Corp.*, No. 14-cv-559, 2015 WL 13651239, at *6 (D.N.M. Oct. 1, 2015) (denying plaintiff's discovery); *Killham v. Sweepsteaks Ltd., Ross, & Graham*, No. 4:25-cv-00990-DGK (W.D. Mo. Aug. 8, 2026) (order partially lifting stay and denying request for jurisdictional discovery in connection with anticipated motions to dismiss for lack of personal jurisdiction).

## **CONCLUSION**

For the reasons discussed above, Plaintiffs have still failed to make a prima facie showing of personal jurisdiction over Graham or Ross. This Court, therefore, must dismiss Plaintiffs' claims against Graham and Ross under Federal Rule of Civil Procedure 12(b)(2).

[7] Plaintiffs note in passing that "[Graham] declines to adopt Ross's representation that he has no employees or agents in New Mexico—raising the obvious likelihood that he does." Opp. at 12. This statement is pure conjecture.

Dated: October 5, 2026

Respectfully submitted,

By: */s/ Christopher D. Joyce*
Christopher D. Joyce NM Bar No. 26-47
Jeffrey A. Neiman (*pro hac vice forthcoming*)
Brandon S. Floch (*pro hac vice forthcoming*)
NEIMAN MAYS FLOCH & ALMEIDA, PLLC
550 S. Andrews Ave, Suite 720
Fort Lauderdale, Florida 33301
Phone: (954) 462-1200
cjoyce@nmfalawfirm.com
jneiman@nmfalawfirm.com
bfloch@nmfalawfirm.com

*Counsel for Defendant Adin Ross*

By: */s/ Robert W. Ward*
A. Jeff Ifrah (No. 26-23)
Robert W. Ward (No. 25-437)
IFRAH PLLC
1717 Pennsylvania Avenue NW, Suite 650
Washington, D.C. 20006
Tel. (202) 524-4140
Fax (202) 524-4141
Email: jeff@ifrahlaw.com
rward@ifrahlaw.com

*Counsel for Defendant Aubrey Drake Graham*